(93 South. 108)

No. 24365.

TOCA v. ROJAS.

(On Motion to Dismiss Appeal, Jan. 31, 1921. On Exception of No Cause of Action, March 27, 1922. On Rehearing by Whole Court, June 30, 1922.)

*(Syllabus by Editorial Staff.)*

On Motion to Dismiss Appeal.

1. **Appeal and error** &#8258;430(1)—Not dismissed for clerk's delay in serving citation of appeal.

Under Act No. 45, of 1870, Ex. Sess. § 11 (Rev. St. § 1907), it is not a sufficient ground for dismissal of an appeal that the clerk of the court failed to issue the citation of appeal and have it served until after the transcript had been filed in the Supreme Court.

On Exception of No Cause of Action.

2. **Parent and child** &#8258;13(1)—Father only liable for acts of minor residing with him.

Under Civ. Code, arts. 2317, 2318, a father is only liable for the acts of a minor child when such child is residing with him or with some person in whose care he had placed him.

On Rehearing.

3. **Parent and child** &#8258;13(2)—Petition for act of child not insufficient for failure to allege that child resided with father.

In an action against a father for the act of his minor child under Civ. Code, arts. 237, 2317, 2318, the petition is not insufficient for failure to allege that the son was residing with the father, since under articles 38, 39, 218, 220, a minor can have no other residence than that of his father, which residence continues until changed in some manner provided by law.

4. **Parent and child** &#8258;13(1)—Birth creates paternal authority, and paternal responsibility springs therefrom.

Birth gives rise to paternal control and authority over a child, and paternal responsibility for torts is the consequence and offspring of the paternal authority.

5. **Parent and child** &#8258;13(1)—Father cannot permanently divest himself of paternal authority so as to absolve self from liability for torts.

While under Civ. Code, art. 220, a father may delegate part of his authority over his minor children to teachers, schoolmasters, and others, he cannot permanently divest himself of any portion of the paternal authority by contract or otherwise, so as to absolve himself from liability for the child's torts.

6. **Parent and child** &#8258;3(1)—Father cannot send minor children away or refuse to support them.

A father cannot send his minor children away from the paternal home, unless he places them in the care of others, nor can he refuse to support and maintain them.

7. **Parent and child** &#8258;13(2)—That child not residing with parent or that paternal authority suspended or destroyed held matters of defense.

In an action against a father for the acts of his minor son, if there has been any change

in the legal requirements or legal status as to residence of the minor with his father, or if for any reason the father's paternal authority and control has been suspended, interrupted, or destroyed, these are matters to be urged in defense of the action.

On the Merits.

**8. Parent and child ⊛—13(1)—Father not liable unless child guilty of some fault.**

Under Civ. Code, arts. 237, 2315, a father cannot be held liable for the act of his minor child, unless some actual or legal fault constituting an offense or quasi offense was committed by the child.

**9. Parent and child ⊛—13(2)—Evidence held not to show negligence of one whose fishhook struck boy in the eye.**

In an action for an injury sustained by plaintiff's son when a fishhook caught in his eye while he was on a levee not constituting a public thoroughfare, near which boys were fishing, evidence *held* insufficient to show that defendant's son was careless or negligent in the handling of his pole and line, assuming that it was his fishhook that caught in plaintiff's son's eye.

**10. Parent and child ⊛—13(2)—Negligence not presumed because companion negligent in handling fishpole and line.**

That defendant's son, whose fishhook caught in plaintiff's eye, was negligent or careless cannot be presumed because his companion was careless or negligent in the handling of his pole and line.

**11. Parent and child ⊛—13(2)—Incumbent on plaintiff to show, not only that act of defendant's son caused injury, but that act was negligent.**

In an action for injuries to plaintiff's son, claimed to have been caused by the negligence of defendant's son, it was incumbent on plaintiff to show, not only that it was the act of defendant's son which caused the injury, but that such act was the result of negligence or the want of due care and caution.

**12. Evidence ⊛—77(1)—Presumed that testimony of witnesses would be against party having opportunity to call them, but not doing so.**

Where plaintiff had the opportunity of producing witnesses who were near by when his son was injured, but failed to do so, the presumption is that their evidence would have been against plaintiff.

**13. Evidence ⊛—317(12)—Son's admission inadmissible against father sued for son's negligence.**

In an action against a father for the negligence of his son, an alleged admission of the son was hearsay and inadmissible.

Provosty, C. J., and Overton and Leche, JJ., dissenting in part, but concurring in the result. Dawkins and St. Paul, JJ., dissenting in part.

Appeal from Twenty-Eighth Judicial District Court, Parish of Jefferson; John E. Fleury, Judge.

Action by James Toca against Leon Rojas. From a judgment for plaintiff, defendant appeals. Judgment set aside, and plaintiff's demand rejected.

E. Howard McCaleb and E. Howard McCaleb, Jr., both of New Orleans, for appellant.

Prentice E. Edrington, Jr., and F. Rivers Richardson, both of New Orleans, for appellee.

. On Motion to Dismiss Appeal.

By the WHOLE COURT as then constituted.

SOMMERVILLE, J. [1] Appellee moves to dismiss the appeal in this case on the ground that he was not cited and served until after the transcript had been filed in this court.

It appears that appellant filed a written petition in the district court, asking for a suspensive appeal to this court, and that citation of appeal and service of notice be made upon the appellee, and the judge so ordered; but, the clerk of court failed in his duty to issue the citation and have it served until after the transcript had been filed in this court, but before the return day, as extended.

This is not sufficient ground for dismissal of the appeal. The citation of appeal was served in time, under the law which provides that:

"No appeal of the Supreme Court shall be dismissed on account of any defect, error or irregularity of the petition, citation or order of appeal * * * or in the citation of appeal or service thereof * * * wherever it shall not appear that such defect, error or irregularity may be imputed to the appellant or his attorney; but in all cases the court shall grant a reasonable time to correct such defects, errors or irregularities, in case they are not waived by the appellee, and may impose upon the appellant such terms and conditions as in its discretion it may deem necessary for the attainment of justice." Act 45, E. S. 1870, § 11, p. 100 (Revised Statutes, § 1907); Hiller v. Barrow, 144 La. 282, 80 South. 538; Taylor v. Allen, No. 24209, 151 La. 82, 91 South. 635, decided November 3, 1920.

It is ordered that the motion to dismiss the appeal be overruled.

#### On Exception of No Cause of Action.

By Division A, composed of Chief Justice PROVOSTY and Justices OVERTON and LECHE.

PROVOSTY, C. J. [2] Plaintiff sues in damages for the use of his minor son who, he alleges, was injured in the eye by the hook of a fishline negligently handled by defendant's son. No allegation is made that the defendant's son resides with the defendant, and because of the absence of such an allegation an exception of no cause of action was filed. It was overruled, but should have been sustained. No liability rests on the parent for the acts of the child, except by virtue of article 2317 of the Civil Code, reading:

"We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications."

The "modification" in the case of the parent is provided for by article 2318, which reads:

"The father, or after his decease, the mother, are responsible for the damage occasioned

by their minor or unemancipated children, residing with them, or placed by them under the care of other persons, reserving to them recourse against those persons."

In the case of Mullins v. Blaise, 37 An. 93, the court emphasized the fact of residing with the parent being one of the conditions requisite for responsibility.

Bandry-Lacantinerie (3d Ed., vol. 15) Des Delits et Quasi-Delits, pp. 595, 597, 599, Com. on Art. 1384, C. N., at No. 2902, p. 597, says:

"The law subordinates to two conditions the responsibility in question. It is required: (1) That the author of the wrong be a minor; (2) that he reside with his parents."

Indeed the language of the Code is so plain that no commentary can be necessary; and all this court can do is to apply it.

The judgment appealed from is therefore set aside; the exception of no cause of action is sustained; and the suit is dismissed at the cost of plaintiff in both courts.

#### On Rehearing.

By the WHOLE COURT.

THOMPSON, J. Plaintiff brings this action in tort on behalf of his 12 year old son, Edwin Toca, who had his right eye injured and his sight seriously and permanently impaired by a fishhook attached to a line and pole, which injury is alleged to have been caused by John Rojas, the 14 year old son of defendant. The petition charges that the plaintiff's son was returning from church, and was walking along the levee on Bayou St. John near the corner of Ball street in this city; that John Rojas and his companion, a boy approximately his age, were also walking at or near the same place; that said John Rojas and his companion had been fishing, and carried their poles with hooks and lines attached to the ends of the poles; that the lines and hooks were negligently allowed to swing and dangle in the air, and were not properly and securely

fastened around the poles, and that the said John Rojas, while in the act of whirling his hook and line around in a careless and negligent manner, suddenly and without warning and without giving an opportunity to escape, the hook on the line of the said John Rojas was violently whirled into the face of Edwin Toca, and penetrated the right eye of said Edwin Toca, causing him great pain, etc.

[3] An exception of no cause of action was filed, and, the same having been overruled, defendant answered, admitting that the eye of said Edwin Toca was injured by a fishhook on the day and at the time alleged, but averring that the fishhook attached to the line and pole in the hands of defendant's son was in no way negligently handled by him, and that, if the injury to plaintiff's son was caused by defendant's son, the plaintiff's son was well aware of all facts and circumstances connected therewith.

There was judgment for plaintiff for $2,-000, and defendant appeals.

On the original hearing in this court the exception of no cause of action was sustained, and plaintiff's action was dismissed.

The exception of no cause of action is directed to the failure of the petition to allege that the defendant's minor son was residing with defendant at the time of the alleged negligent act, and it is contended that this fact is a part of plaintiff's case, is, a condition precedent to plaintiff's right of recovery, and must be alleged and proved.

The foundation of paternal responsibility for the acts of minor children, which cause injury to the person or property of others, is to be found in the following articles of our Civil Code:

Article 237: "Fathers and mothers are answerable for the offenses or quasi offenses committed by their children, in the cases prescribed under the title: Of Quasi Contracts and of Offenses and Quasi Offenses."

Article 2317: "We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications."

Article 2318: "The father, or after his decease, the mother, are responsible for the damage occasioned by their minor or unemancipated children, residing with them, or placed by them under the care of other persons, reserving to them recourse against those persons."

The fundamental error upon which the exception of no cause of action is founded, in our opinion, is in assuming that an unemancipated minor, whose father is living, and who has not been apprenticed or placed in the care of others, can have a legal or an actual residence other than that of his father.

Domicile is declared to be that place in which a person makes his habitual residence (C. C. 38), and the domicile of the father, when living, and of the mother when the father is dead, is that of the minor not emancipated (C. C. 39). A child cannot quit the paternal house without the permission of his father and mother, who have a right to correct him, provided it be done in a reasonable manner. C. C. 218.

In the Succession of Robert, 2 Rob. 427, it was held that a minor unemancipated, who had lived abroad for 15 years, but who was born in this state, where his tutrix resided, is domiciled here. It was said:

"A minor, not emancipated, can have no other domicile than that of his father, mother, or tutor. A domicile of choice can only be acquired by one who is sui juris; consequently it cannot be acquired by a lunatic or minor."

In reviewing the article of the Code hereinabove quoted, and others in pari materia, this court said, in Prieto v. St. Alphonsus Convent of Mercy, 52 La. Ann. 679, 27 South. 169 (47 L. R. A. 656):

"In view of these various provisions of law * * * we arise from the study of the

question with a perfect conviction that a minor, under the age of 21 years, remains under the authority and control of his father, if living, and of his mother, if he be dead; and that, during his minority, unless sooner emancipated, he is without capacity under our Code to leave the paternal domicile permanently and select for himself another domicile or residence. This is a fundamental principle that lies at the very foundation of society, and was intended to support and maintain the exercise of paternal authority in the family and the home; and to guard and protect the children of the family until their minds should become sufficiently cultivated, and their judgments sufficiently matured, to enable them to make judicious and proper selections of places of, abode for themselves."

[4] Birth gives rise to paternal control and authority over the child, and, as was tersely stated in Coats v. Roberts, 35 La. Ann. 891:

"Paternal responsibility is the consequence and offspring of the paternal authority."

[5, 6] The father may delegate a part of his authority over his minor children to teachers, schoolmasters and others to whom he may intrust them for their education— such as the power of restraint and correction—but he cannot permanently divest himself of any portion of the paternal authority, by contract or otherwise. C. C. 220; Gates v. Renfroe, 7 La. Ann. 569. He cannot send his minor children away from the paternal home unless he places them in the care of others, in which event he remains responsible for their acts. Nor can he refuse to support and maintain them without subjecting himself to a criminal prosecution.

Of course the parental authority may be suspended and interrupted, and even taken away altogether by the force and effect of the law. As, for instance, when the state, in the exercise of its sovereign right and power, takes the child away from the parents for the betterment of its condition; when by judgment of court the child is given over into the custody and care of another; where the minor is called into the service of his state or his country, or is summoned into a posse comitatus. In all such instances, the paternal authority is interrupted or terminated, and likewise the paternal responsibility.

"When the law, ex propria vigore, destroys or suspends the paternal authority over the minor, it, at the same time, destroys or suspends the paternal responsibility." Coats v. Roberts, 35 La. Ann. 891.

Whether or not the paternal responsibility ceases when the minor quits the paternal roof without the consent of his parents, or whether the parents can put an end to parental authority and responsibility by sending the minor away from the parental home, without placing such minor in the care of others, is not necessary here to determine, and we do not decide.

We have not found a single case in the jurisprudence of this state wherein it was directly held, in a suit seeking to hold the parent liable for damage occasioned by the act of his minor child, that it was sacramental for the petition to allege that the minor was in fact residing with the parent at the time of the act which caused the injury. All of the cases which we have been able to find after diligent search were met on the merits, and the question as to whether it was required to be alleged and proved that the minor resided with his parent appears never to have been raised prior to the present suit.

The case cited and relied on by defendant, and the only one cited, is Mullins v. Blaise, 37 La. Ann. 93. In that case we find, from an examination of the original record, that the petition did allege that the defendant's child was residing with its father at the time the injury was inflicted on the plaintiff's young daughter. And the court, in its opinion, did say that all conditions requisite to fasten responsibility on the defendant father were established, viz.: (1) That the damage was occasioned by the act of the minor; (2) that the act was a fault of the most culpable

character; and (3) that the minor was residing with the father. But in that case the question of residence of the minor was not an issue. The defendant's child was of tender years, and, the law having fixed its residence with the father and no evidence appearing to the contrary, the court very properly said the fact of the minor residing with the father was established. The opinion can hardly be regarded therefore as holding that it was essential to allege and establish by evidence that the minor was residing with the father.

[7] It, therefore, being the law of the case that the minor, John Rojas, could have no other residence than that of his father, that residence continued until changed in some manner provided by law. If, as a matter of fact, there had been any change in the legal requirement and in the legal status as to residence, or if for any reason the parental authority and control of the father over his son had been suspended, interrupted, or destroyed, that fact certainly was peculiarly within the knowledge of the defendant, and was clearly a matter to be urged in defense of the action.

Our conclusion is that the petition sets forth a cause of action, and that it was not necessary for the plaintiff to allege that the defendant's minor son was residing with him.

On the Merits.

[8] There is little necessary to be said upon the pivotal issue on which the case must turn. It is unquestionably the law that, in order to hold a defendant liable for damages for personal injuries arising ex delicto, there must appear some actual or legal fault; some act of commission or omission which produced the injury or damage, for which reparation is claimed. The article of the Civil Code (2315), the source of practically all of such actions, only obliges him by whose *fault* damage is occasioned to repair it. And the rule of jurisprudence is that:

"To recover damages for injuries sustained through the alleged fault of another, the fault, and the connection between the fault and the injuries, must be shown, with reasonable certainty. There can be no recovery where only the possibility, or the probability, of such fault and connection is shown." Rohr v. New Orleans Gaslight Co., 136 La. 546, 67 South. 361.

The rule applies with equal force when the father is sought to be held liable for the act of his minor child. While the law imputes the fault of the minor to the father, there must of necessity be some fault, actual or legal, in the act of the minor which caused the damage, before the father can be held liable in damages. Fathers and mothers are only made answerable for the offenses and quasi offenses committed by their children (C. C. 237), from which it follows that, if the act of the minor which caused the damage did not in law constitute an offense or quasi offense, there can be no paternal responsibility.

[9] The evidence in the case fails to meet the legal requirements. The record is silent as to how or in what manner the unfortunate accident happened, and it fails altogether to show any fault on the part of John Rojas. It is alleged in the petition that John Rojas and his companion negligently allowed their hooks and lines to swing and dangle in the air, and that while whirling their hooks and lines around in a careless and negligent manner the hook of John Rojas was caught in the eye of plaintiff's son. There is no proof to sustain the allegation of negligence in so far as John Rojas is concerned.

The accident occurred on Good Friday; plaintiff's son went to church; defendant's son and a companion, Lester Mailleur, went fishing in Bayou St. John. On his way to church plaintiff's son walked on the sidewalk of Moss street, and on his return he

traveled in a path on the levee which parallels the bayou and Moss street. The path on the levee is frequently used by pedestrians. When the plaintiff's son reached the point where the two boys had been fishing, he met Lester Mailleur and a young lady. Mailleur was whirling his line around his pole, and the hook came near catching in the hat or veil of the young lady. Toca remarked to Mailleur that he came near hitting the lady's hat with his hook, and about the same time, or a few moments after, a hook was caught in Toca's eye. Young Rojas was not on the levee, but was down between the levee and the bayou, and as soon as the hook was caught in Toca's eye he went to him and removed it. There is grave doubt that it was the hook of Rojas. No one testified that he saw Rojas at the time or just before the hook caught the eye of young Toca. Edwin Toca, who was 13 years old at the time, was the only witness who was present at the time of the accident to testify in the case. He did not see John Rojas before the accident, and did not know that John Rojas was about until he saw him removing the hook from his eye. The only reason he knew that it was the hook of John Rojas was because he took the hook from his eye, and had the line and pole in his hands afterwards. His evidence on this point is as follows:

"Q. Now, you say you did not see his hook and line; can you say it was his hook and line?

"A. After it struck me in the eye, he was holding the line and hook in his hand.

"Q. How do you know that was his hook and line unless you saw him before?

"A. After he struck me in the eye with the hook, he was the only one that was holding it.

"Q. You didn't see him with the hook and line before you were struck?

"A. No, sir.

"Q. Did you know that John Rajos took the hook out of your eye?

"A. Yes, sir.

"Q. You don't know anything else?

"A. No, sir.

"Q. All you know is that Lester Mailleur was swinging a hook and line over his head and nearly touched the hat of a lady?

"A. Yes, sir."

[10-12] This is substantially all of the testimony of the young man touching the manner of the accident and the connection of young Rojas therewith. It certainly fails to show that Rojas was handling his pole and line in a careless or negligent manner. That fact cannot be presumed because his companion, Mailleur, was careless or negligent in the handling of his pole and line. It was incumbent on the plaintiff to show, not only that it was the act of defendant's son which caused the injury, but that the act was the result of negligence or the want of due care and caution. It is not disputed that Rojas was down near the water's edge, and, even if it had been shown that he was winding his line around the end of the pole by whirling it in the air, it is doubtful if such an act would have constituted actionable negligence on his part. While it is true there was a pathway on the levee which was frequently used by pedestrians, the levee was not designed for, nor was it regarded as, a public thoroughfare. As already stated, there was a street and sidewalk which parallel the levee and bayou, and which was specially dedicated to the use of the public. Rojas was therefore not on any public street or public highway. Toca did not see him, nor did he see Toca. There is no explanation as to why other witnesses were not produced by plaintiff. The young lady spoken of was there when the accident occurred, and there were quite a number of girls and boys on the banquette near by. The young boy, Mailleur, was summoned by the plaintiff; at least counsel for defendant was notified by plaintiff that he expected to take his testimony, but for some reason, not explained, the testimony of this witness was not taken. Having the opportunity of producing these wit-

nesses and failing to do so, the presumption is that their evidence would have been against the plaintiff.

[13] We have not considered the testimony of plaintiff's counsel as to the admission claimed to have been made to him by young Rojas. The testimony was hearsay and clearly inadmissible. But even if the testimony was considered it would not establish actionable negligence or show legal fault in Rojas. The counsel's statement is:

"He simply said that he was coming up the bank whirling his line, and that he did not see the boy until it was all over."

The accident to the young man is regrettable, the sight of the eye has been limited permanently to two-sevenths of normal, but it is one of those unforeseen, unintentional, and, so far as the evidence discloses, nonnegligent accidents which are liable to happen, and which do happen, in the course of human events.

For the reasons assigned, it is ordered and decreed that the judgment appealed from be set aside, and the plaintiff's demand rejected at his costs.

PROVOSTY, C. J., and OVERTON and LECHE, JJ., dissent from that part of the opinion overruling the exception of no cause of action, but concur in the result.

DAWKINS and ST. PAUL, JJ., concur in the ruling on the exception, but dissent to the ruling on the merits.

PROVOSTY, C. J. (dissenting). The majority opinion interprets article 2317 as if it read that parents were responsible for the damage occasioned by their minor children so long as the children were under parental authority, which authority could be interrupted only by some act of the law.

Now the said article does not read that way, but reads, "residing with them, or placed by them under the care of other persons," and nothing can be plainer than that such a thing is possible as that a minor, especially after the age of 17 or 18, may be neither "residing with" his parents nor be "placed by them" under the care of other persons," as the result simply of the act of the minor, with or without the consent of the parent.

By common right no one is responsible in damages for the act of some other person. The rule making parents liable for the acts of their minor children is in derogation of common right. Laws in derogation of common right are strictly construed. The said article 2317 is in derogation of common right. The majority opinion is not content with construing it liberally, but, as appears to me, amends or redrafts it.

To me the proposition appears to be a plain one, that if a parent is responsible for the damage occasioned by his minor child only when the minor resides with him or has been placed by him in the care of some other person, a petition against such a parent fails to show liability on the part of the parent, unless it alleges that the minor resides with the parent or has been placed by him in the care of some other person.

I therefore respectfully dissent from the overruling of the exception of no cause of action.

It is also to be remembered that pleadings are construed most strongly against the pleader, who is supposed to have made his case as strong as he could in his pleading.