## STORTZ et ux. v. NEW ORLEANS PUBLIC SERVICE, Inc., et al.*

### No. 13999.

Court of Appeal of Louisiana. Orleans.

May 16, 1932.

O. S. Livaudais, of New Orleans, for appellant Mrs. C. A. Chambers.

Ivy G. Kittredge, of New Orleans, for appellee New Orleans Public Service, Inc.

Michel Provosty and Oliver P. Carriere, both of New Orleans, for appellees.

HIGGINS, J.

This is a suit by Mr. and Mrs. Stortz to recover damages for personal injuries and medical expenses from the defendants, the New Orleans Public Service, Inc., George Roy, and Mrs. C. A. Chambers, in solido, said to have resulted through the joint negligence of the defendants.

The petition alleges that on January 11, 1929, about 1 o'clock p. m., Mrs. Stortz was seated on the front seat of her husband's half-ton Ford truck, which was parked on Sophie Wright place (formerly Camp place), parallel to the curb, facing down town, and directly in front of the Magazine Market, holding her three year old son in her arms; that Miss Mildred Chambers, the minor daughter of Mrs. C. A. Chambers, one of the defendants, was driving the Pontiac coupé of the defendant, George Roy, with his consent and for his account, in the direction of Canal street on Sophie Wright place (street), when a Magazine street car in charge of the defendant railway company's employees, going in the same direction, struck the coupé and, as a result of the collision, the automobile was knocked against the truck in which Mrs. Stortz was sitting, causing her to fall backward into the truck, with the child on top of her, and to sustain certain physical injuries, and, subsequently, a miscarriage; that the motorman was at fault in not keeping a proper lookout and in driving the street car at an excessive rate of speed, and that Miss Chambers, the driver of the coupé, was negligent in driving the coupé in front of the street car. The husband prays for medical expenses in the sum of $121 and the wife for

damages for personal injuries in the sum of $5,000.

The New Orleans Public Service, Inc., denied liability, averring that the accident was caused solely through the fault of Miss Chambers in driving the coupé automobile suddenly and without any warning directly in the path of the street car, while the street car was being operated in a careful manner and at a moderate rate of speed, and that the motorman did everything in his power to avoid the accident by sounding his gong and applying the emergency brake.

The defendant George Roy denied that any relation of agency existed between himself and Miss Chambers, the driver of his Pontiac coupé car, and, therefore, disclaimed liability.

Defendant, Mrs. C. A. Chambers, filed an exception of no right or cause of action, which was overruled, and then answered denying liability and averring that her daughter was free from fault; that she was over eighteen years of age, and, at the time of the accident, was driving the Pontiac coupé automobile of defendant Roy with his consent and for his account.

There was judgment in favor of the plaintiffs against the defendant Mrs. C. A. Chambers for the sum of $621 and dismissing their suit as against the other defendants, New Orleans Public Service, Inc., and George Roy. Mrs. Chambers has appealed suspensively. Plaintiffs have appealed devolutively from the judgment dismissing the suit as against the defendant New Orleans Public Service, Inc., and, also, have answered the appeal of Mrs. Chambers, asking that the amount awarded be increased to the sum prayed for. The judgment of the district court dismissing plaintiffs' suit against George Roy is final as far as plaintiffs are concerned, because they did not appeal as to him.

The exception of no right or cause of action filed by Mrs. Chambers is based upon the following grounds, to wit:

First, that the petition fails to allege that Miss Chambers was an unemancipated minor, or that her father was deceased.

Second, that section 73 of Act No. 296 of 1928 repealed article 2318, Rev. Civ. Code, in so far as it concerns unemancipated minors who have reached the age of eighteen years, so as to relieve parents and guardians of responsibility for damages caused by the negligence of such minors.

Taking up the grounds of the exception in order, we observe that the first and second paragraphs of plaintiffs' petition read as follows:

"That the New Orleans Public Service, Inc., a Louisiana corporation, Mrs. C. A. Chambers, a widow, whose full name is unknown to your petitioners, and George Roy (the last two of whom are of lawful age and residents of the City of New Orleans), are justly and truly indebted unto your petitioners in the full sum of Five thousand, one hundred and twenty-one ($5121.00) dollars, for this, to-wit:

"(2) That Mrs. C. A. Chambers is the mother of Miss Mildred Chambers, a minor who resides with her said mother at 2352 Camp street."

Article 2318 of the Revised Civil Code provides as follows: "The father, or after his decease, the mother, are responsible for the damage occasioned by their minor or unemancipated children, residing with them, or placed by them under the care of other persons, reserving to them recourse against those persons. The same responsibility attaches to the tutors of minors."

We believe that the foregoing allegations of the plaintiffs' petition are sufficient to bring the plaintiffs' case within the provisions of article 2318 of the Civil Code. If the allegations of the petition in this respect were not clear and definite enough as far as the defendant Mrs. Chambers was concerned, her right was to file an exception of vagueness. Furthermore, this court and the Supreme Court, on a number of occasions, have held that, where an exception of no right or cause of action is based upon insufficiency of allegations in the petition, the trial court should permit an amendment and not dismiss the suit. In the instant case on the trial on the merits, Miss Chambers testified, without objection, that her father was dead, that she was living with her mother at the time the accident occurred, and that she was unemancipated.

In Toca v. Rojas, 152 La. 318, 93 So. 108, 111, the plaintiff sued for damages for the use of his minor son, who, he alleged, was injured in the eye by the hook of a fish line negligently handled by the defendant's son. No allegation was made that the defendant's son resided with the defendant, his father, and, because of the absence of such allegation, an exception of no cause of action was filed. In overruling the exception the court said:

"It, therefore, being the law of the case that the minor, John Rojas, could have no other residence than that of his father, that residence continued until changed in some manner provided by law. If, as a matter of fact, there had been any change in the legal requirement and in the legal status as to residence, or if for any reason the parental authority and control of the father over his son had been suspended, interrupted, or destroyed, that fact certainly was peculiarly within the knowledge of the defendant, and was clearly a matter to be urged in defense of the action.

"Our conclusion is that the petition sets forth a cause of action, and that it was not

necessary for the plaintiff to allege that the defendant's minor son was residing with him."

We conclude that the first contention under the exception is without merit.

We now pass to the second ground of the exception, i. e., that section 73 of Act No. 296 of 1928, the General Traffic Law of the State of Louisiana, repealed article 2318, Rev. Civ. Code, as above stated. The relevant part of that section of the statute reads as follows:

"Section 73. (Minors Operating Motor Vehicles.)

"No person shall be permitted to operate a motor vehicle until they have reached the age of 14 years. Provided further that if the Department shall determine that a minor who is only fourteen years old is not competent to operate a motor vehicle he shall not be permitted to do so. Provided further that should a minor under eighteen years of age have an accident while operating a motor vehicle his parents or guardian shall be held responsible for damages or injury, if the courts decide that the accident was caused by the fault of the minor."

Counsel for Mrs. Chambers argues from the above language that the converse logically follows; that is, if the minor is over eighteen years of age, his parent or guardian is not responsible for damages for his negligent acts.

Plaintiff's counsel counters by pointing out that, if such an interpretation as contended for by Mrs. Chambers' counsel is accepted, section 73 of Act No. 296 of 1928 would be unconstitutional, as being in violation of article 3, § 16, of the Constitution of Louisiana of 1921, which requires that: "Every law enacted by the Legislature shall embrace but one object, and shall have a title indicative of such object," for the title of the act in no way indicates that the Legislature intended that the provisions of art. 2318, Rev. Civ. Code, should be repealed.

■ He further contends that the provisions of Act No. 296 of 1928 are not applicable to the regulation of traffic in the city of New Orleans, because it is a city having more than 15,000 inhabitants and has adopted ordinances regulating and controlling traffic within its limits; and that section 89 of the act specifically provides that such municipalities are not covered by the provisions of the statute.

The relevant part of section 89 of Act No. 296 of 1928 reads as follows: " * * * The terms, provisions, and penalties imposed by this act shall not be deemed or construed to apply to any municipality or incorporated town or city of more than 15,000 inhabitants, when such incorporated town, city or municipality shall have heretofore adopted or shall hereafter adopt any ordinance or ordinances regulating or controlling traffic within the limits thereof."

We do not deem it necessary to pass upon the question of interpretation and construction, or the constitutionality of section 73 of the act raised by counsel, because we are of the opinion that, under section 89 of the act, the city of New Orleans, being a municipality of over 15,000 inhabitants, and having adopted ordinances regulating and controlling traffic within its limits, it is specially exempted from the provisions of the statute.

We are, therefore, of the opinion that our learned brother below properly overruled the exception of no right or cause of action.

■ We shall now take up the merits of the case and give our appreciation of the voluminous and contradictory testimony contained in the record.

All of the witnesses are in accord that the plaintiff's truck was parked parallel to the curb by the Magazine Street Market on Sophie Wright place, facing toward Canal street; that there was a heavy rain falling at the time; that Miss Mildred Chambers was driving the Pontiac coupé car of the defendant Roy on Sophie Wright place in the direction of Canal street; that, as the Pontiac car approached the parked truck, it was struck by the Magazine street car, which was also going down town on the same street, and, as a result of the impact, the coupé car was pushed into the parked truck.

The plaintiffs proved that Mrs. Stortz was sitting on the seat on the right side of the Ford truck, with her three year old son on her lap, and, as a result of the impact, fell backward into the truck and injured herself; that her husband, who was adjusting some packages in the truck, fell out of the rear of the truck because of the jolt and was injured, no claim being made therefor.

The defendant New Orleans Public Service, Inc., through its motorman and conductor in charge of the street car, a disinterested witness who was a passenger on the front platform of the street car, and a former employee who was also a passenger on the street car, showed that the car was going down town at a rate of speed of about ten or twelve miles an hour; that the Pontiac coupé was parked parallel to the curbing in front of the Magazine Market in the rear of the truck, and that, as the street car approached within about ten feet of the coupé, Miss Chambers, suddenly and without any warning or signal, drove diagonally across the street, and, when the left front wheel of the coupé was over the river side rail of the street car tracks, the right front vestibule of the street car struck the left running board of the coupé about where the left front fender is connected to it; that the motorman, as the coupé approached the car tracks, sounded the gong and applied the emergency brake, but the car struck the automobile before the car could be brought to a stop.

Miss Chambers and a colored man of forty-eight years of age, who was standing in the door of the Magazine Market at the time of the accident, testified that the coupé was being driven down town on the tracks of the street car company about eight or ten miles an hour, and that the street car approached at a very rapid rate of speed, without giving any signal of its approach, and ran into the left rear side of the Pontiac coupé, causing it to collide with the plaintiff's parked truck.

Miss Chambers admits that she was on an errand for her mother and had stopped the Pontiac coupé parallel to the curbing in the rear of the parked truck, and that she did not get out of the automobile or stop the engine because she learned that the plaintiffs' sea food stand, from which she intended to purchase some oysters for her mother, had been closed; that she looked in the mirror of her car to see if anything was approaching from the rear, and, not seeing any vehicle, after giving the usual signal with her hand, drove diagonally across the street so as to pass the parked truck; that she did not hear the approaching car, or any signal by the motorman in sounding the gong; that the impact was slight; that she had looked into the direction of Mr. and Mrs. Stortz, who were on the truck, in order to speak to them, because she knew them.

The evidence is conflicting as to whether the street car struck the left rear side of the coupé automobile, or the left side where the running board joins the front fender, but we feel that the preponderance of the evidence shows that the latter place was the point of contact. Miss Chambers' testimony corroborates that of the witnesses for the railway company to the effect that the street car was moving slowly, because she admits that the jolt was very mild, and that the street car stopped with the middle part of it where her car was jammed against the truck. The great majority of the witnesses testified that the street car stopped with its right front vestibule resting against the left side of the Pontiac coupé.

A careful reading of the record convinces us that Miss Chambers was solely at fault in suddenly and without any warning, and without keeping a proper lookout, leaving the curb where she was parked and running the Pontiac coupé diagonally in front of the street car. We feel that the motorman, as soon as he realized that it was the young lady's intention to drive across the street car's path, sounded the gong and applied the brakes, but was unable to stop the car before striking the coupé. Heideman v. N. O. Public Service, Inc., 1 La. App. 275; Gaisser v. New Orleans Public Service, Inc., 12 La. App. 110, 124 So. 692; Geismar v. Gaisser, 12 La. App. 112, 124 So. 691.

The proximate cause of the accident being the negligence of Miss Chambers, the unemancipated minor daughter of Mrs. Chambers, with whom she was living, her father being dead, the mother is responsible in damages resulting from her careless act. Sutton v. Champagne, 141 La. 470, 75 So. 209; Toca v. Rojas, 152 La. 325, 93 So. 108; Green v. Moore, 4 La. App. 495; Maloney v. Goelz, 12 La. App. 31, 124 So. 606.

As a result of the impact, plaintiff fell into the back part of the truck and her three year old boy, whom she was holding in her lap, fell on top of her. She sustained a laceration of the right arm around the elbow and general contusions and bruises about the lower abdomen, the body, and chest. She was taken in an automobile to the home of her mother, and two days later suffered a miscarriage, which was followed by a uterus hemorrhage. She called in Dr. Cirino, the family physician, who treated her for her injuries. She was confined to her bed for three weeks, during which time she was treated regularly by the physician, and thereafter, for a period of two months, it was necessary to continue visiting the doctor's office. She was unable to do her work and assist her husband in the operation of his sea food stand in the Magazine Market.

Counsel for defendants point out that Dr. Sims, the physician for the New Orleans Public Service, Inc., testified that in his interview with Dr. Cirino on January 15, 1929, after he (Dr. Sims) had visited Mrs. Stortz at her home on January 14th, Dr. Cirino at that time stated that the lady had not had a miscarriage and estimated that her period of disability would be about two weeks. Dr. Cirino admits that at first he felt that the injury was slight, but that, based upon clinical examination, Mrs. Stortz suffered a miscarriage, and that the profuse hemorrhage and pieces of membrane which were expelled for a period of nearly three weeks convinced him that Mrs. Stortz had had a miscarriage. Although Dr. Sims called at the home of plaintiffs on January 14th, three days after the accident, he admits he made no attempt to examine Mrs. Stortz and did not visit her again. We therefore feel that the attending physician's testimony and Mrs. Stortz' testimony that the miscarriage had taken place outweighs the testimony of Dr. Sims, who, though afforded an opportunity of examining the patient, did not attempt to do so, or visit her again.

The Supreme Court has allowed various amounts for miscarriages, dependent upon the severity of the injury and the result, as far as impairing the health of the injured party was concerned, and also the state, or length, of pregnancy of the injured woman. In the instant case the plaintiff was pregnant for a period of about seven weeks, or two months. It is not contended that her health has been impaired as a result of the accident, and it appears that she has com-

pletely recovered. The trial court, apparently, allowed the sum of $500 for her injuries and miscarriage and the sum of $121 for medical expenses, as claimed.

In the case of Johnson v. South N. O. Light & Traction Co., No. 9048 of the docket of this court, decided October 1, 1923, an unreported case, [see Louisiana and Southern Digest] the court reduced the judgment from $1,500 to $1,000, where the woman suffered a miscarriage as the result of an accident, the fœtus being four months old.

In Stewart et al. v. Arkansas Sou. R. Co., 112 La. 764, 36 So. 676, where the woman was pregnant for about two months and suffered a miscarriage, the court reduced the judgment from $2,500 to $1,000.

In view of the above authorities, we believe the amount awarded Mrs. Stortz by the lower court is inadequate, and that it should be increased so as to allow the wife the sum of $1,000 for personal injuries and miscarriage. See, also, Thomson et al. v. Cooke et al., 147 La. 922, 86 So. 332, and Joiner et al. v. Texas & Pac. Ry. Co., 128 La. 1050, 55 So. 670.

For the reasons assigned, the judgment appealed from is amended by awarding the plaintiff Anthony J. Stortz judgment in the sum of $121 against the defendant Mrs. C. A. Chambers, with legal interest from judicial demand until paid, and awarding to plaintiff Mrs. Anthony J. Stortz judgment in the sum of $1,000 against the defendant Mrs. C. A. Chambers, with legal interest from judicial demand, until paid. In all other respects the judgment appealed from is affirmed. Defendant Mrs. C. A. Chambers to pay all costs of both courts.

Judgment amended.