## JOHNSON v. BUTTERWORTH.*
### No. 14539.

Court of Appeal of Louisiana. Orleans.
Jan. 29, 1934.

H. P. Viering, of New Orleans, for appellant.

James G. Schillin, of New Orleans, for appellee.

JANVIER, Judge.

This case results from most unusual facts. A very young child of defendant is alleged to have bitten plaintiff, a nurse engaged to take care of the child. Liability in the father is said to result from article 2318 of the Civil Code, which, in part, reads as follows:

"The father, or after his decease, the mother, are responsible for the damage occasioned by their minor or unemancipated children, residing with them. * * *"

The allegations of the petition are that the plaintiff was engaged as a nurse to take

*For opinion refusing rehearing, see 153 So. 58.

care of the minor daughter of defendant; that on a certain occasion the nurse was directed by the mother of the child to take the child home; and that, in attempting to do so, the child bit the nurse and caused the damage complained of.

In the district court an exception of no cause of action was maintained, and from the judgment dismissing the suit plaintiff has appealed.

The exception is based primarily on the contention that the liability placed upon the parents by the article in question is not absolute and that, in order here to hold the father liable, there should have been an allegation, either to the effect that the child had previously exhibited a tendency to bite, or that the father could have prevented the act but failed to do so.

It is further contended that even if, as a matter of law, a father may be liable to a third person for such an act of his child, nevertheless there is no liability to a nurse for the reason that a nurse should be held to have assumed the risk of such an act.

Finally, the argument is made that in any event the nurse should not be permitted to recover because, under the article referred to (No. 2318), if the father can be held liable, he has his recourse against the nurse, since, under that article, where parents are liable for the acts of their minor children "placed by them under the care of other persons," there is reserved to them "recourse against those persons."

■ That there is no allegation that the father could have prevented the child from biting the nurse, and that he failed to do so, is, we believe, of no importance. It will be noted that under the codal article liability is in no way dependent upon the ability of the father to prevent the act complained of.

Such a point was sought to be made in the matter of Sutton v. Champagne, 141 La. 469, 75 So. 209, 210. There the parents of one boy had given him a rifle. He loaned it to another boy without the knowledge of the widowed mother of the other. While in the hands of the borrower it was accidentally discharged and a third boy was killed. After finding that the parents of the owner of the rifle were liable, the Supreme Court discussed the question of whether the widowed mother of the borrower could also be held. The court said:

"It seems illogical and hard that a mother should be liable in damages for the consequences of the act of somebody else in intrusting a dangerous instrument to her inexperienced child out of her presence and without her knowledge. At the same time the plaintiffs make out a case against her, under the hereinabove quoted codal provisions, when they show that, owing to the un-

skillful and careless handling of a rifle in the street by her boy, their child was killed."

The court found that there was no escape and rendered judgment against the mother, although she had not been present when the accident occurred and although she had no knowledge that her son was using the gun of the other boy. The question is simply this: Is the liability of the father or parent for the wrongful act of his minor children absolute, or is it, by the codal article, made to depend upon whether or not the father or parent was himself in some way negligent? Counsel for exceptor argues that certain decisions of the Supreme Court of our state hold that there is no liability, unless there is fault on the part of the parent. He points particularly to Toca v. Rojas, 152 La. 317, 93 So. 108, 111, and he seeks to show that there the father was held free of liability because there was no fault. But he overlooks the fact that when the Supreme Court said that there had been no fault, they referred, not to fault on the part of the parent, but fault on the part of the child. The court found that the act of the minor was not a negligent act. Of course, if a minor does some act which causes damage, but the act itself is not wrongful, there can be no recovery. The principle "damnum absque injuria" is applicable. The court said in that case:

"Fathers and mothers are only made answerable for the offenses and quasi offenses committed by their children (C. C. 237), from which it follows that, if the act of the minor which caused the damage did not in law constitute an offense or quasi offense, there can be no paternal responsibility."

In Wagner v. Barbin, 12 La. App. 640, 125 So. 766, 767, the court held that the father was not liable for damage which resulted from the use by his minor son of a "sling shot." The court said:

"There was not any evidence introduced showing that the 'sling shot' was a dangerous weapon."

And, also:

"* * * We are of the opinion the evidence failed to establish that young Barbin was guilty of negligence. * * *"

Counsel further contends that the fault referred to in several decisions, in which it was held that the father cannot be held liable unless there is fault, must be the fault of the parent because of the well-established rule that children of tender years cannot be guilty of legal fault or negligence. But the fact is overlooked that there is a difference between fault and the legal responsibility therefor. Manifestly a very young child cannot be held liable for its negligent acts and cannot be prevented from recovering for its own injuries caused by the fault of some one else, even if it be shown that its own negligence contributed to the result; but,,

none the less, such a child may do an act which is a fault in the sense that it is wrongful—that it should not have been done.

This question was discussed by the Supreme Court in Mullins v. Blaise, 37 La. Ann. 92, in which a child six years old fired a "roman candle" into a group of other children and injured one of them. When suit was brought against the father of the six year old boy, he interposed the defense that there could be no liability without fault and that a child so young could not commit legal fault, and that, consequently, there could be no liability. The court said:

"The act was a fault of the most culpable character. It is true that by reason of the tender years and lack of discernment of the minor, this fault may not be, in a legal sense, imputable to him. But the exploded vagary of Toullier that this is a reason for exempting the father from liability can find no recognition at our hands. The law itself imputes the fault to the father."

In that decision is found the statement upon which counsel for exceptor bases his contention that the liability which article 2318 places upon the parent comes into being only if the father could have prevented the act but has failed to do so. The statement to which we refer reads as follows:

"The law itself imputes the fault to the father. It presumes that it resulted from lack of sufficient care, watchfulness and discipline on his part, in the exercise of the paternal authority."

That statement, in view of the decision in Sutton v. Champagne, supra, and of all the other cases in which parents have been held liable for the acts of their minor children living with them, but committed when the parents were not present, manifestly does not mean what counsel contends it does. We believe that the case, read as a whole, is full authority for the view that the liability of the parent does not in any way depend upon whether he or she could have prevented the act. There is, as the court said, a presumption of fault on the part of the parent, which presumption results from the fault of the minor and which presumption will not yield to proof that the parent was not at fault.

Often irresponsible minors commit acts which are wrongful and which cannot be prevented by their parents, nor by any one else. The question of where the resulting loss should be placed is an economic one, and it appears to us, and apparently appeared to our Supreme Court, that the legislative department of our government has. placed such responsibility upon the parents. We are not prepared to say that that department has acted unwisely, even if it were our prerogative to do so.

That the legislative department, in adopting article 2318, intentionally made this liability absolute, seems apparent when we consider article 1384 of the Code Civil of France, from which this article 2318 of our Code was taken. In the French Code the wording of the article placing the liability upon the father and, after his decease, upon the mother, is practically identical with that which we find in article 2318. The pertinent portion of it reads as follows:

"Le père, et la mère après le décès du mari, sont responsables du dommage causé par leurs enfants mineurs habitant avec eux."

Translated, this article provides that:

"The father, and the mother, after the death of the husband, are responsible for the damage caused by their minor children living with them."

The article of our Code is a literal translation of that article of the French Code.

However, in the French Code and in the same article there is another provision, which is referred to in Mullins v. Blaise, supra, and which provides that:

"The liability herewith arises, unless the father and mother, teachers, or artisans should prove that they could not prevent the deed, which gives rise to this liability."

In the original French Code the above appears as follows:

"La responsabilité ci-dessus a lieu, à moins que les père et mère, instituteurs et artisans, ne prouvent qu'ils n'ont pu empêcher le fait qui donne lieu à cette responsabilité."

This restriction is omitted in our Code. We cannot but believe that the framers of our Code deliberately omitted it and that, in doing so, they intended to make the liability of the parent absolute and to deprive him of the defense which is sought to be made here, that there was no way in which the act complained of could have been prevented. It is interesting to note that the words of article 2318, placing the liability upon the parent for the acts of the minor child, are almost identical with those of article 2321, which place upon the harborer of an animal the responsibility for the damages caused by the animal, and that, in spite of this fact, our courts have written into article 2321 the condition that the harborer of the animal is liable only for negligence, and that he can prove absence of negligence by showing that he did not know that the animal was possessed of a vicious disposition; whereas, although the words of article 2318 are almost identical, the jurisprudence has established a contrary rule in the case of the liability of parents and has made that liability absolute, regardless of whether the parent had prior knowledge of the vicious temper of the child and regardless of whether he could have prevented the act. This difference unquestionably results from the fact that the framers of our Code, in omitting intentionally the restriction upon the parents' liability, gave to the article as it is

written the meaning that the parent should be liable for the misdeed of the minor, whether the parent could have prevented it or not and whether or not the parent had prior knowledge of the existence of a vicious disposition on the part of the minor.

The next point sought to be made is that the parent cannot be held liable because "there is no allegation that this little girl had ever previously exhibited a 'vicious temper,' nor is there any averment that defendant or his wife had any knowledge of the fact that this little girl was possessed of a 'vicious temper.'" This argument assumes that there should be placed upon article 2318 the same interpretation which has been placed upon article 2321, which latter article places upon the harborer of an animal responsibility for damage caused by it. We believe that, in discussing the first point made, we have disposed of this contention. It cannot be denied that in the case of animals there is in the article of the Code as written no requirement that, in order to hold the owner liable, there must be a showing of knowledge of prior vicious temperament, and that, in spite of this, the courts have held such knowledge an essential prerequisite, and we also note that in the case of minor children there is also in the Code itself no such requirement, and yet there can be no doubt that the courts of this state have established firmly the rule that it is not a prerequisite that prior knowledge of vicious disposition on the part of a child be shown. The rule with reference to animals results from the fact that domestic animals are presumed to be gentle and harmless until the contrary is made to appear; whereas, what seems to be the contrary rule with reference to children may be based on the conclusion to which some of us may have come that, as a matter of fact, all small children are potential sources of danger, or at least of annoyance to others, and that, therefore, parents who desire to enjoy the blessings of the patter of little feet must be responsible for the damage done by little hands, or, as is the case here, by little teeth.

That under the French Code, as the result of the restriction to which we have referred, the responsibility of the parent is not absolute, has been often held, as appears from annotations which we find cited in Dalloz' Code Civil (Petite Collection Dalloz), p. 497, from which we deem it necessary to cite only one, which reads as follows:

"La responsabilité civile mise à la charge du père par l'art. 1384 civil code, à raison du dommage causé par son enfant mineur habitant avec lui, n'est point absolue, et le père n'est pas responsable du dommage causé par son fils s'il rapporte la preuve qu'il n'a pu empêcher le fait qui y donne lieu. Douai, 7 Nov. 1893, D. P. 94. 2.-159."

Our translation of the above we now give:

"The civil liability charged against the father by Article No. 1384, Civil Code, because of damages caused by his minor child, living with him, is not absolute, and the father is not liable for the damage caused by his son if he brings forth the proof that he could not prevent the deed (act or occurrence), which occasioned it. Douai, November 7, 1893, D. P. 94. 2.-159."

It is contended that, even if the liability of the father for the injuries caused to a third person by the wrongful act of the minor be absolute and in no way dependent upon whether the father could have prevented the act, still there is no liability here because plaintiff is not a third person, and because, in accepting employment, she must be held to have assumed the risk of the employment. If it can be said that the act of a young child in biting a nurse is an ordinarily to be expected act, then the defense urged is sound. The doctrine of assumption of risk is based upon the theory that one who knows there are certain unusual risks that are ordinarily associated with the work undertaken assumes the risk of being injured by any one of those happenings and cannot be heard to complain if he is injured as the result of one of the actual dangers which he has assumed. But it must be remembered that it is not all dangers and risks which are thus assumed, but only those which usually are connected with, or are incidental to, the work done. Hence, if it can be said that danger of a child's bite is one ordinarily incidental to the taking care of children, then it is proper to say that plaintiff assumed the risk of the injury which she here sustained.

But we do not believe that such is the case. Children ordinarily do not bite their nurses, or any one else, for that matter, and we cannot be persuaded that a nurse, in accepting employment to take care of a young child, can be charged with the knowledge of the danger that she may be bitten by the child. In fact, counsel for exceptor concedes that this particular child was not in the habit of biting when he says in his brief that "it was only on this isolated occasion (that) the child displayed a vicious temper." That the only risks assumed are those of usually to be expected dangers is said in Corpus Juris, vol. 5, p. 1412, wherein we find that the phrase "assumption of risk" is:

"A term in a contract of employment, either express or implied from the circumstances of the employment, by which the employee agrees that the dangers ordinarily or obviously incident to the discharge of his duty in the particular employment shall be at his own risk; the acquiescence of an ordinarily prudent man in a known danger, the risk of which he assumes by contract; the voluntary act of an ordinarily prudent man who, for hire, takes the chance of a known or obvious

danger incident to his employment; the voluntary contract of an ordinarily prudent servant to take the chances of the known or obvious dangers of his employment and to relieve his master of liability therefor; a term which the law imports into the contract, when nothing is said to the contrary, that the servant will assume the ordinary risks of the service for which he is paid; the voluntary exposure, without remonstrance, to the ordinary hazards of the particular use of machinery or appliances, claimed by an employee to be defective or unfit, but of which conditions he knew, or must necessarily have acquired knowledge in the ordinary pursuit of his duties; in effect a waiver of defects and dangers and a consent on the part of the employee to assume them, no matter whether he be careful or negligent in his conduct. The term usually applies to the relation of master and servant, but may apply to other relations."

Counsel states a hypothetical case and asks whether we would condemn in damages a parent for the act of a minor child in that case. He says:

"Suppose in the carrying of this baby its hand had accidentally struck plaintiff's eyeglasses and knocked them off, or its finger had accidentally struck one of plaintiff's eyes and injured it, would your Honors condemn defendant for such injuries?"

Our answer is that the act of the child in waving its arms is one which is normally and usually to be expected, and that the risk of injury from such an act is assumed by a nurse. We think the hypothetical case well illustrates the difference between the nature of the risks assumed and those not assumed.

■ Whether there was contributory negligence on the part of the nurse is a matter which may be set up in defense, but which cannot be considered on the exception of no cause of action. If the evidence on the merits shows that the nurse could have prevented the bite and did not do so, or that the child was mistreated by the nurse and that the bite resulted from this mistreatment, then, when the matter is tried on the merits, no doubt the suit will be dismissed. But those are questions which we cannot now consider.

■ The final contention is that since the child was in the custody of the nurse herself, who is the plaintiff, she (the nurse) was legally responsible for the misdeeds of the child. In other words, it is said that, if the plaintiff can hold the father responsible for the accident, the father can in turn have his recourse

against the nurse, who is the plaintiff here, and we will have the result that A can recover a judgment against B for the acts of O and that B can obtain at the same time a like judgment in warranty against A. This contention is based upon the latter portion of article 2318, but results, we believe, from too broad an interpretation being placed thereon. It is contended that the words "reserving to them recourse against those other persons" create a liability in warranty against the nurse and in favor of the parent for such damage as the minor may cause while in the custody of the nurse; that a nurse who has only temporary charge of the minor is responsible for his misdeeds during that temporary period. Such plainly is not the meaning of that portion of the article. We call attention to the fact that the liability of the parents does not exist at all unless the child is "residing with them," or (has been) "placed by them under the care of other persons." The framers of the Code realized that if it were proper to place liability upon the parent for the acts of the children residing with them there was no good reason why the parent having custody and control of the child should be permitted to send it to a boarding school, or to some special tutor, and thus to escape liability for the child's misdeeds. They, therefore, inserted the latter portion of the clause, so that such a result could be avoided. In other words, that portion of the article really means that parents are responsible for the damage occasioned by their minor or unemancipated children residing with them, or, if not residing with them, placed by them under the care of other persons. The other persons referred to are not such persons as nursemaids or temporary attendants who have charge of the child only subject to the constant supervision of the parents themselves and while the child remains a resident in the parental abode, but are such persons to whom the child is entrusted while living apart from the parents.

■ It follows that the petition states a cause of action and that the judgment maintaining the exception must be reversed.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be and it is annulled, avoided, and reversed, and that the matter be and it is remanded to the Twenty-Fourth judicial district court for further proceedings not inconsistent with the views herein expressed and according to law; costs of this appeal to be paid by appellee, other costs to await final disposition.

Reversed and remanded.