253 So.2d 558 (1971)
Edward McDONALD, Individually and as Natural Tutor and Administrator of the Estate of his Minor Son, Gordon Steve McDonald, Plaintiff-Appellant,
v.
TERREBONNE PARISH SCHOOL BOARD et al., Defendants-Appellees.
No. 8540.
Court of Appeal of Louisiana, First Circuit.
September 2, 1971.
Rehearing Denied November 3, 1971.
Writ Refused December 13, 1971.
*559 Louis D. Bufkin, of McHale & Bufkin, Lake Charles, for plaintiff-appellant.
Philip E. Henderson, of O'Neal, Henderson, Haneman & Morris, Houma, Ben C. Toledano, of Porteous, Toledano, Hainkel & Johnson, New Orleans, for defendants-appellees.
Before SARTAIN, ELLIS and BLANCHE, JJ.
SARTAIN, Judge.
This appeal involves multiple actions arising out of an altercation in a public school located in Terrebonne Parish which resulted in the loss of an eye by Gordon Steve McDonald, minor son of the plaintiff herein.
The McDonald youth and Larry Wayne Pledger were, on January 19, 1966, students at the Schriever Elementary School and were participants in a Special Education class established to train children who, although retarded to various degrees, were considered to be educable and potentially useful members of society. On that date, McDonald was ten years and ten months of age while young Pledger was ten years and two months old.
Inclement weather had caused the school faculty to put into effect a "rainy day" schedule which called for the children to play in their classrooms during the lunch period. At approximately 12:00 A.M., Mrs. Patricia Sanchez, the teacher of the special education class, left the classroom to go to the teacher's lounge for coffee. Some ten minutes later, a scuffle ensued in the classroom between the two boys mentioned above, which caused the Pledger youth to momentarily retreat into the hallway. When McDonald followed, Pledger threw a common household broom at his adversary which tragically struck McDonald under the left eye in such a manner as to cause the loss of its sight.
Suit was subsequently instituted by Edward McDonald on behalf of his minor son against the Terrebonne Parish School Board, Mrs. Sanchez, C. R. Pledger, Larry Pledger, and Summers Picou, principal of the Schriever School. By a supplemental and amending petition, the Lumber Mutual Fire Insurance Company, as personal liability insurer of the Pledgers, was made a party defendant and that insurer later *560 initiated third party claims, on behalf of its insured, against the School Board, its insurer, the Travelers Insurance Company, and Mr. Picou, alleging the negligence of these parties in the control and supervision of the Special Education class.
In a well-reasoned and exhaustive opinion in which the district judge thoroughly considered the facts adduced at the trial and the law applicable thereto, judgment was rendered adversely to the plaintiff; all third party demands were also dismissed. This judgment was predicated upon a finding that the incident was provoked by the larger McDonald whose size intimidated Larry Pledger, a smaller and lighter boy who had become understandably afraid of McDonald because of prior confrontations. He further determined that McDonald put Pledger in fear of bodily harm, that he deliberately continued the encounter when he followed the smaller boy into the hall as he retreated, and that Pledger threw the broom for protection only, thus pretermitting any recovery on the part of the plaintiff. In short, it was decided that McDonald was the aggressor who should be denied recovery for personal injuries inflicted upon him in self-defense by an adversary. We affirm that judgment.
The testimony of the two minors involved in this altercation are the only accounts in the record of what actually happened between the two boys. Their versions of the incident, though undoubtedly the whole truth, as they remember it, are rambling and, at times incoherent and, as might be expected from persons suffering from such disabilities, their inability to respond to the questions posed confused matters more. The trial judge's opinion, however, contains the following carefully drawn synopsis of events which we adopt as our own:
"Larry Pledger and another boy were playing with wooden blocks or dominos, or both, when MacDonald [sic] approached them with a toy jeep (or wooden shoe) (Pledger-5, p. 66) and knocked over the blocks and/or dominoes, thus spoiling their game. Whether a scuffle between Pledger and MacDonald [sic] took place immediately, is not clear. It is uncontradicted, however, that Pledger went out of the room into the hall and picked up an ordinary household broom that was in the corner of the hall. MacDonald [sic] testified at the trial that Pledger said if MacDonald [sic] came any closer to him he would throw the broom. MacDonald [sic] also testified that he (MacDonald) [sic] `said to himself he was going to the principal's office. He had been previously told by the principal, Mr. Picou, to come tell him if he was in any fights. MacDonald [sic] had been in a fight before and had gone to Picou's office.
Apparently, MacDonald [sic] attempted to proceed to Picou's office (P-2, p. 64) but gave no indication that he was not chasing Pledger and the latter, as he had warned, threw the broom. Pledger testified he threw the broom at MacDonald's [sic] feet and that it bounced up and hit MacDonald [sic] in the eye. In a deposition taken May 10, 1968, excerpts from which are filed in the record, Pledger stated that (Pledger-5, p. 60)
"It started getting too scared and when he starting coming, I just threw it and it hit on the straws and bounced up and hit him * * *.'"
We are here dealing with the intentional tort of a minor. Civil Code Article 2318 establishes responsibility for such a tortious act in the following terms:
"The father, or after his decease, the mother, are responsible for the damage occasioned by their minor or unemancipated children, residing with them, or placed by them under the care of other persons, reserving to them recourse against those persons.
The same responsibility attaches to the tutors of minors."
*561 Our jurisprudence has had occasion to interpret this and other codal provisions relative to the complex question of the commission of offenses and quasi-offenses committed by those lacking majority. The case of Johnson v. Butterworth, 180 La. 586, 157 So. 121 (1934) and its progeny have established the principle that the tort of a minor will be imputed to the responsible adult only when "fault" can be ascribed either to the adult or to the child committing the act. As stated therein at page 129:
"All of which shows that there is no liability on the part of the parents for an injury done to a third person by their minor child unless the injury was the result of an offense or a quasi offense on the part of the child, or negligence or imprudence on the part of the parent."
In that case, the Court had previously restated prior pronouncements in Toca v. Rojas, 152 La. 317, 93 So. 108 (1922), in which the "fault" concept was enunciated:
"The rule applies with equal force when the father is sought to be held liable for the act of his minor child. While the law imputes the fault of the minor to the father, there must of necessity be some fault, actual or legal, in the act of the minor which caused the damage, before the father can be held liable in damages. Fathers and mothers are only made answerable for the offenses and quasi offenses committed by their children (C.C. 237) from which it follows that, if the act of the minor which caused the damage did not in law constitute an offense or quasi offense, there can be no paternal responsibility."
We are unable to find legal fault in the act committed by Larry Pledger. Although the tort was intentionally committed, by McDonald's own testimony, he was the instigator of the initial act which began this unfortunate chain of events, as he deliberately interfered in the game of which he was not a part. He continued in the role of the aggressor as he followed the smaller Pledger into the hall. There, he was duly warned that if he advanced closer, the broom would be thrown and by McDonald's own account, he did move toward Pledger with the tragic result which touched off this litigation.
It is well established that a person on the defensive in an altercation has a right to protect himself if the circumstances are such that he might reasonably conclude that he is in danger of bodily harm. However, that retaliation must be commensurate with the force exerted against him and cannot go beyond that which is reasonably necessary for self protection. Murray v. Dominick, 236 So.2d 626 (2d Cir., 1970) and authorities cited therein.
We think Larry Pledger's actions under the circumstances did not amount to excessive violence in his self defense. The brandishing of a household broom, certainly not an inherently dangerous object, did not deter McDonald from the action he chose to take. Pledger testified that he threw the broom at McDonald's feet and that it bounced up, hitting him in the eye. Although unexpected and tragic results followed, the act, as related by Pledger stands uncontradicted in the record, and we are unable to find that the throwing of the broom, as previously described, amounted to excessive force in self defense. Therefore, the plaintiff's actions against Larry Pledger, his father, and the Lumber Mutual Fire Insurance Company must be rejected.
Likewise, the claims made against the School Board, and its insurer, Mrs. Sanchez, and Summers Picou must also be dismissed, as no cause of negligence has been made out against them.
The appellant has complained that Mrs. Sanchez was unqualified to teach a Special Education class because she had no formal education in that field. However, the main thrust of his argument seems to be that the teacher and principal negligently failed to take special precautions with Pledger, *562 whose propensities for fighting and uncontrollable "conduct were known to them.
Although Mrs. Sanchez was never served with process in this suit, and thus was not present at the trial, she was a qualified Spanish teacher who voluntarily accepted the Special Education class. There was also testimony that she had received workshop training in Special Education prior to the school year. Allowing Mrs. Sanchez to become the teacher of this class under those circumstances does not make out a prima facie case of negligence against the Terrebonne Parish School Board. Absent some showing of incompetence on the part of Mrs. Sanchez, of which there is none in the record, this contention is without merit.
Her momentary absence from the classroom does not amount to negligent conduct on the teacher's part, as she requested Mrs. Hebert, the teacher of an adjacent class to supervise her students in her absence. Mrs. Hebert stated that Mrs. Sanchez had been gone only five or six minutes and that she (Mrs. Hebert) had heard only the usual noise for a play period during that time. The fact that each student is not personally supervised every moment of each school day does not constitute fault on the part of the School Board or its employees. Bourgeois v. Indemnity Ins. Co. of North America, 60 So.2d 718 (Orl.La.App.1952).
The district judge was also correct in dismissing the plaintiff's contention that "the case of Larry Pledger" was mishandled by Mr. Picou because of his prior knowledge of the boy's tendency to constantly fight. The record does not support this argument. Mr. Picou stated that many children are retained in the school who are involved in more incidents of fighting than Larry Pledger and that Pledger was not the worst child in the school. While we are aware that this youth had been involved in several previous altercations, it must be remembered that this was a Special Education situation involving handicapped children. A record of perfect conduct would be most unusual to find.
Accordingly, for the above and foregoing reasons the judgment of the district court is affirmed in all respects, the appellant to be cast for all costs.
Affirmed.