(84 South. 33)

No. 22527.

## RUBENSTEIN v. FILES.

(Feb. 2, 1920. Rehearing Denied March 1, 1920.)

*(Syllabus by Editorial Staff.)*

1. FRAUDS, STATUTE OF ⬤➝124—VERBAL SALE OF LAND WHERE DELIVERY MADE VALID IF CONFESSED ON INTERROGATORIES.

While every transfer of immovable property must be in writing, a verbal sale is good against vendor who confesses it when interrogated on oath, provided actual delivery has been made; a verbal promise to sell standing on the same footing as a verbal sale (Civ. Code, arts. 2275, 2440, 2462).

2. DISCOVERY ⬤➝79—ANSWERS TO INTERROGATORIES IN PLACE OF WRITTEN EVIDENCE CANNOT BE CONTRADICTED BY PAROL.

Code Prac. art. 354, when construed with other provisions of the law, authorizes oral testimony in contradiction of answers to interrogatories on facts and articles only when such testimony is otherwise admissible, but not where the answer supplies the place of required written evidence.

3. DISCOVERY ⬤➝79—VENDOR'S ANSWERS TO INTERROGATORIES TO BE TAKEN AS TRUE.

In suit for specific performance of agreement to sell realty, defendant's answers to questions propounded to her by interrogatories on facts and articles must for the purpose of the title be taken as true.

4. FRAUDS, STATUTE OF ⬤➝124—NO SALE OR PROMISE TO SELL SHOWN.

In suit for specific performance of agreement to sell realty, *held*, that defendant vendor's answers to interrogatories fell short of the confessions contemplated by Civ. Code, art. 2275, and failed to prove a sale or possible promise to sell the property in controversy to plaintiff.

5. FRAUDS, STATUTE OF ⬤➝124—NO RATIFICATION BY VENDOR OF SALE MADE BY AGENT.

In suit for specific performance of contract for sale of realty, *held*, that evidence failed to show that defendant vendor ratified sale made by her alleged agent.

6. FRAUDS, STATUTE OF ⬤➝158(1)—PLAINTIFF PURCHASER HAD BURDEN OF SHOWING RATIFICATION OF SALE MADE BY VENDOR'S AGENT.

In suit for specific performance of contract for sale of realty alleged to have been made by defendant vendor's agent it was incumbent on plaintiff to prove ratification of sale, that the agent was such and made the sale, and that defendant after knowledge thereof failed to repudiate it.

7. DISCOVERY ⬤➝79—ANSWER TO INTERROGATORIES EQUAL TO TESTIMONY OF TWO WITNESSES.

In suit for specific performance of contract for sale of realty, testimony of defendant in answer to interrogatories on facts and articles was equal to the testimony of two witnesses, and it was necessary for plaintiff to overcome the answers by testimony of two witnesses or by one witness strongly corroborated by other circumstances.

8. DISCOVERY ⬤➝79—ANSWERS TO INTERROGATORIES NOT OVERCOME BY TESTIMONY OF ONE WITNESS AND FAILURE TO CALL ANOTHER.

Failure of defendant to call a witness which plaintiff should have called cannot be considered as corroboration within rule that defendant's answers to interrogatories may be overcome by one witness strongly corroborated.

9. EVIDENCE ⬤➝77(1)—FAILURE TO CALL WITNESS RAISES PRESUMPTION THAT TESTIMONY WOULD BE UNFAVORABLE.

Where plaintiff might have summoned a witness to help make out his case, failure to do so creates the presumption that, if the witness had testified, the testimony would have been against plaintiff.

Appeal from First Judicial District Court, Parish of Caddo; J. R. Land, Judge.

Suit by Joe Rubenstein against Miss R. M. Files. Judgment for plaintiff, and defendant appeals. Reversed.

Alexander & Wilkinson and Wilkinson, Lewis & Wilkinson, all of Shreveport, for appellant.

Foster, Looney & Wilkinson, of Shreveport, for appellee.

SOMMERVILLE, J. Plaintiff alleges that defendant agreed to sell, and that he agreed to buy from her, certain property belonging to her in the city of Shreveport, on March 21, 1916; that defendant authorized R. R. Emery to consummate the sale for $40,000, and that said Emery did so on the day and

date mentioned and for the amount agreed upon, and that he (plaintiff) had paid $1,000 cash on the purchase price; that he notified defendant on March 30, 1916, that he was ready to accept title and to pay the balance of the purchase price, but that defendant refused to make title to him. He sues for specific performance to compel Miss Files to make title to him to the property for $40,000, or, in the alternative, that he have judgment against her for $7,500 damages.

In his petition plaintiff propounds certain interrogatories on facts and articles to the defendant in which he asks:

"Did you not request Mr. R. R. Emery to find a purchaser for you of lots 15 and 16 of block 24 of the city of Shreveport, being the property involved in this suit? (2) Did not Mr. R. R. Emery call on you during the day of March 21, 1916, and then and there tell you that he had a purchaser who was willing to purchase said property for the sum of $40,000 cash, net to you? (3) Did you not then and there tell him, the said R. R. Emery, that he could close the deal for said sale for $40,000 cash, net to you? * * * (5) On the occasion above referred to did not Mr. Emery tell you that he would go to the purchaser and make the contract in question for $40,000 cash to you, and that he would then and there receive $1,000 as part of the purchase price, and that he would execute a receipt thereafter as is usually done in such cases? (6) After the said R. R. Emery had made said sale, did he not tell Mrs. Allen over the phone that he had made said sale for you and for the sum of $40,000 cash, $1,000 of which he had received, and the balance of the purchase price to be paid as soon as the titles were approved by the purchaser's attorney, and did not Mrs. Allen deliver to you this message?"

To which interrogatories defendant made sworn answers as follows:

"Mr. Emery never at any time had any authority to sell my property or any portion of it; neither do I know that he ever claimed to have sold it. Mr. Emery some days prior to March 21, 1916, told me that he had an offer of $40,000 net cash for my two lots corner Milam and Marshall streets, and urged me to agree to sell it at that price, which I finally told him I would do. He then said that a few days'

time would be required to enable the intended purchaser to arrange for the money and examine the title. I think he said three or four days, and I said this would be satisfactory. A few days thereafter he informed me that the intended purchaser would not agree to pay him his commission on the proposed sale, and he wished to know if I would agree to pay him one-half of his commission on $40,000 and one-half of the taxes for the year 1916 on the property, in order to consummate the sale. I told him positively I would not. He said this would break the trade, and I told him I did not care to make it, anyhow. I considered that this closed the matter. Subsequently to this—it may have been March 21st, or about that date; I keep no diary—Mrs. Allen told me she had been talking to Mr. Emery over the phone, and that he said the man with whom he was negotiating for the sale of the lots had agreed to pay the $40,000 net cash and would insist upon his right to take the property. I told her that I considered the matter finally closed when the person with whom he was negotiating refused to pay $40,000 net cash; that I had so told Mr. Emery, and would no longer consider any proposition for a sale of the lots. Mr. Emery did not explain to me on March 21, 1916, or at any time, that he had received $1,000 cash from the purchaser, and that time would be given, etc. I never heard of this supposed cash payment until after I had refused to pay half of the commission and taxes, which I had refused to do, and had said I would not sell at all. When Mrs. Allen told me of this new offer to take the property at $40,000 net without deduction for commissions and taxes, I promptly told her that I would not do so, and in order to stop any further importunity in the matter, at Mrs. Allen's suggestion, wrote to Mr. Emery my determination to this effect. No; Mr. Emery did not deliver to me any copy of any receipt executed by him as my agent acknowledging that he had received from plaintiff $1,000 as part payment of the property in question."

There was judgment in favor of plaintiff ordering a specific performance of the sale, and defendant has appealed.

[1] Every transfer of immovable property must be in writing, but it is alleged that this sale was made verbally; and, if it was thus made, it was good against the vendor as well as against the vendee, who would confess it when interrogated on oath, provided

actual delivery had been made of the immovable property thus sold. C. C. art. 2275.

Delivery had not been made to plaintiff, and, instead of confessing, the defendant denied that any sale had been made by her of her property to plaintiff.

[2] Under other provisions of the Code the verbal promise to sell immovable property stands upon the same footing as the verbal sale. Article 2462, 2440, 2275. The Code of Practice provides further:

"Art. 354. The answers of the party interrogated are evidence, but do not exclude adverse testimony, and shall be weighed by the judge as other testimony."

It is, however, well settled that the article quoted is to be construed with other provisions of law, and that, so construed, it authorizes oral testimony in contradiction of answers to interrogatories on facts and articles only when such testimony is otherwise admissible, and that, as such answers supply the place of written evidence, where such evidence is required, they cannot be contradicted by parol testimony.

[3, 4] For the purposes of the title, defendant's answers to the questions propounded to her must therefore be accepted as true, and, so accepted, they fall short of the confession contemplated by Art. 2275, C. C., and fail to prove a sale or possible promise to sell the property in controversy to plaintiff.

It is well settled that one cannot recover damages for the nonperformance of a contract the existence of which he fails to establish in the manner here attempted.

[5] The district judge recognized the law as above stated, but in the course of his opinion said:

"The sole question to be determined by the court is whether defendant ratified the sale made by R. R. Emery to plaintiff."

And he held that—

"While parol evidence is not admissible to establish agency to sell lands, it can be received to prove a ratification of sale of real estate."

And he admitted the testimony of R. R. Emery, the alleged agent of defendant, to prove that defendant had ratified the sale made by him (Emery) to plaintiff. Mr. Emery was the only witness examined on the trial of the case. The trial judge held that:

"The oath of two witnesses, or one witness corroborated by strong circumstantial evidence, or by written proof, is required to successfully traverse the answers of defendant to the interrogatories in this case."

Mr. Emery testified in effect that—

"After I left Miss Dick Files the trade was closed, and I then went to Mr. Rubenstein, and he gave me a check for $1,000." "I told Mr. Rubenstein that that closed the trade; that was before the contract was written and Mr. Rubenstein gave me the check for $1,000; and I told him that I would go to the office and write a receipt and bring it back to him; and I said to him, 'What about my commission?' Anyway, I went back to the office and wrote up a receipt. * * * Then came in the question of the commission. When I left Miss Files' home, after we closed the trade, I went to Mr. Rubenstein, and he said the price was all right, $40,000, that he would take the property, and he gave me a check for $1,000, and I told him I would go to my office and write a receipt. 'Now,' I says, 'Mr. Rubenstein, the trade is closed; who pays my commission?' He said that Miss Files ought to pay it, and I told him 'No,' that she wanted the net price, and then he said, 'I will pay the commission, but you go and ask her if she will pay half; if she will not pay half, understand that I will pay the whole commission.' I went to my office and rang up Miss Files—she cannot talk over the telephone—and Mrs. F. C. Allen came to the telephone, and I told her to ask Miss Files if she was willing to pay half of the commission, and she said that she would submit the question and let me know. Nothing more was said about it that day. That was the 21st day of March. I told Mrs. Allen to tell Miss Files the trade was closed and ask her if she would be willing to pay $400 of the commission; that Mr. Rubenstein would pay the other $400, his 2 per cent. She said that she would tell Miss Files and tell me what she said. That was on the 21st. The next morning when I opened my office, or rather when I came to the office, as the office was open before I got there,

I found a note from Miss Files stating that the trade was off, and that she had decided— The conversation over the phone was almost in these exact words: Mrs. Allen came to the telephone. I told her the trade was closed, that I had received $1,000 from my purchaser, did not even give his name, and that the purchaser had requested me to find out if she would be willing to pay $400 on the commission, and he would pay the other half. Mrs. Allen answered that she would tell Miss Files, but that she was satisfied that she would not pay it. That was the entire conversation."

Again the witness said:

"She [Miss Files] did not say that the trade was closed in the presence of Mrs. Allen, the day before"—that is, the day before March 21st, when Mr. Rubenstein is alleged to have accepted title to the property.

[6] The testimony of Mr. Emery failed to show any sale, and it failed to show a ratification of a sale by defendant. The proposition to pay one-half of the commission, submitted by Mr. Emery, was an entirely new proposition, different from the one that he had first suggested to Miss Files; it was refused. This last proposition was not made to defendant directly, but to Mrs. Allen, who was requested by the witness to tell Miss Files that the trade was closed and to ask her if she would be willing to pay $400 commission. There is no testimony as to what Mrs. Allen told defendant, and inasmuch as the plaintiff is seeking to recover on a verbal promise of sale, or on a ratification of such sale made by the defendant by failing to repudiate a sale of which she had been advised, it was incumbent on the plaintiff to prove as a part of his case, if parol testimony was admissible, that Mr. Emery was the agent of the defendant, and that her agent had made the sale in question, and that she had been notified of the sale and failed to repudiate it. It was not incumbent on the defendant to show that she had not received knowledge of the proposed sale, or completed sale. The plaintiff failed to make out his case when he did not show

that the defendant knew of the sale and did not repudiate it.

[7] The testimony given by defendant in answer to interrogatories on facts and articles is equal to the testimony of two witnesses, and it was necessary for the plaintiff to overcome her answers to the interrogatories by the testimony of two witnesses, or by one witness strongly corroborated by other circumstances. Hynson v. Texada, 19 La. Ann. 470.

[8, 9] The district judge found that Mr. Emery was corroborated by the failure on the part of the defendant to call Mrs. Allen as a witness on her behalf; but the reverse of that proposition was true. The plaintiff should have called Mrs. Allen to support his case, and his failure to do so is a presumption that, if she had been called, she would have corroborated the statements made by the defendant. The circumstance of Mrs. Allen not having been called as a witness in the case was misconstrued by the district judge against the defendant. Plaintiff might have summoned Mrs. Allen to help make out his case; the failure to do so creates the presumption that, if she had testified, it would have been against him. Plaintiff carried the burden of proof, and his failure to call a witness who would assist him in sustaining such burden is a presumption against him, and not a presumption against the defendant, who fails to call such witness to assist the plaintiff in making out his case. Plaintiff sued the defendant on the ground that Mr. Emery was the agent of the defendant, and, as such, made a sale of the property in question, on the terms stated, and that she was notified of this sale and did not repudiate it. He (plaintiff) carried the burden of proof to show that Emery was defendant's agent, and, as such, made a sale of the property in question, and that she was notified of it and did not object.

Plaintiff failed to prove that Emery was

the agent of the defendant, and that, after making the sale, he notified. her that he had done so, and that she made no objection to it.

It is therefore ordered, adjudged, and decreed that the judgment of the district court be annulled, avoided, and reversed, and there now be judgment dismissing plaintiff's suit at his cost.

O'NIELL, J., concurs in the decree.