## No. 458

### First Circuit

### HENNESSY v. DAIGLE

(October 10, 1929. Opinion and Decree.)

Dupont & Dupont, of Plaquemine, attorneys for defendant, appellee.

ELLIOTT, J. In a collision on the Jefferson Highway between Kirby H. Hennessy, while riding a motorcycle, and Eugene Daigle, while driving his automobile, occurring on November 7, 1927, in the Parish of West Baton Rouge, the plaintiff Hennessy was badly injured. His left leg was broken above the knee. His left ankle was also badly injured, the result being that his left leg will always be shorter than the other. The plaintiff has endured great pain and suffering. He was confined to his bed for three or four months, but was able after four or five months to get about on crutches. He will be crippled for the balance of his life as a result of his injuries.

The plaintiff coming east toward Port Allen was meeting a wagon going west loaded high with moss, pulled by two mules and driven by a negro man named George Green.

The defendant going west toward Rosedale was at the same time overtaking the wagon.

The plaintiff alleges that the defendant, driving his automobile on the north, which was defendant's right side of the road going west, came up and remained behind the wagon as petitioner approached it, and as petitioner proceeded to pass the wagon, defendant suddenly, carelessly, recklessly and without warning drove his automobile to the left, which was to the south side of the road, and the wrong side for the defendant in the direction he was going, in an attempt to pass between the wagon and petitioner. That there was not space enough between petitioner and the wagon for defendant to pass, and he therefore struck and injured petitioner in his effort

Borron & Johnson, of Baton Rouge, attorneys for plaintiff, appellant.

to do so. The plaintiff claims of defendant $11,279 in damages on said account.

The defendant filed an exception of no cause or right of action to plaintiff's demand, which being overruled, he answered, denying plaintiff's allegations and alleging that he had passed the wagon 30 or 40 yards at the time of the accident, and that he was in no way responsible for the collision. He alleges that the accident was due to the negligence, carelessness and recklessness of the plaintiff. That plaintiff was driving on the north side of the road at an excessive rate of speed, in loose gravel, and struck defendant. The north side of the road was the left and wrong side for plaintiff to be on in the direction he was going,

The plaintiff has appealed from a judgment rejecting his demand.

The exception of no cause or right of action was not urged in this court and will be regarded as abandoned.

The plaintiff testifies that he was riding his motorcycle at about 26 miles an hour on the south side, which was the right side for him in the direction he was coming. That he had met and was passing the wagon in question when Mr. Daigle came suddenly from behind and attempted to pass it on the same side and at the same time with himself. That there was not room between plaintiff and the wagon for defendant to pass between them, and that defendant, in his effort to do so, struck plaintiff and injured him as alleged in his petition.

The plaintiff, asked if he had done anything to avert an accident when he saw Mr. Daigle coming around the wagon in an effort to pass it, said that when he saw him he realized immediately that it would be a close call for defendant to get by him, if he could get by, and having such a little time to think, he pulled further over towards the ditch, but defendant struck him before he could get to it.

"Q. Now, when you started to pass this wagon how far had you gotten along the side of the wagon when you first saw defendant's automobile turn to the left and come around from behind the wagon in an effort to pass it?
"A. I was right about the front wheel of the wagon, just in front of the front wheel, right about even with the back end of the team."

Further testifying, he said when he saw defendant coming from around behind the wagon, he put on his brakes but could not stop, as it occurred in a second's time, but he checked his speed and pulled over close to the ditch in order to give defendant a chance to get as far over toward the wagon as he could. In another part of his testimony he states that he was right even with the front wheel of the wagon and team at the time the accident happened. In another place he says:

"Q. Who reached the wagon first, you or Mr. Daigle?
"A. Well, I reached the wagon first, because I was half way past the wagon before he came from behind it."

He further states that he saw the wagon about 100 yards distant coming meeting him, and that there was an automobile coming behind it at about the same distance that he was from it in front.

R. J. Torres, witness for plaintiff, driving an oil truck coming east on the highway, reached the scene about 15 minutes after the collision had occurred, being the first person to arrive. He did not see the occurrence, but found plaintiff lying in the ditch, or close to the edge of it, and on the right-hand side of the road going east. Mr. Daigle, the defendant, and Mr.

Himel were also there with the plaintiff at the time. He was asked:

"Q. Did Mr. Daigle say anything to you with reference to how the accident happened?
"A. Well, he said he was passing a load of hay at the time.
"Q. Is that all he said?
"A. Well, he said he saw this man and he figured that he had enough space to pass between the wagon and the motorcycle."

In another place:

"Q. Now, just state exactly what Mr. Daigle said to you about how the accident occurred?
"A. I asked him how it happened and he said that he was coming right back of the wagon and was passing the wagon as a motorcycle drove by.
"Q. Did you testify that he told you that he thought there was room between him and the wagon for the motorcycle to pass?
"A. He said he figured the man had room to pass behind."

He was asked to repeat his statement, and said, that he drove up and saw that there had been an accident; that he asked Mr. Daigle how it happened, and that Mr. Daigle said that a loaded wagon was passing ahead of him, and that he was passing the wagon when the motorcycle drove by.

Asked to again repeat what Mr. Daigle had said, he stated that Mr. Daigle said, "There was a wagon, loaded passing ahead of him and that he was passing the wagon when he met the motorcycle, and the accident happened."

He declared that Mr. Daigle had not told him that he was in front of and had already passed the wagon when he met the motorcycle.

The testimony of Mr. Torres as to the admissions of the defendant, corroborates plaintiff. And the fact that plaintiff was lying in or on the edge of the ditch on the right-hand side of the road, in the direction he was going, is well established.

The testimony of the plaintiff and defendant is in direct conflict.

The defendant Daigle testifies that he was driving on the right-hand side of the highway, going west, at the rate of 20 or 25 miles an hour. That coming up behind the wagon he slowed down and pulled to the left side to look ahead of it and see whether there was an automobile coming within a distance in which he would have time to go around it, and not seeing anything in front of him he pulled around the team and the wagon. That he then saw the motorcycle coming on his (meaning plaintiff's) left side of the road, which was the wrong side for the plaintiff in the direction he was travelling. That plaintiff kept coming, and starting to come around, hooked on his, defendant's, left fender, and trying at the same time to turn to his right, he lost control of his wheel, which cut around quick to his left, and then swerved quickly back to his right, struck defendant.

Further questioned:

"Q. Well, about how far in front of his wagon was your automobile?
"A. Probably two or three lengths of the automobile, probably 25 to 40 yards.
"Q. What side of the road were you driving your car on?
"A. On my right-hand side. Of course when I went around the wagon I had to go to the center of the gravel road, but I was back on my right-hand side.
"Q. At the moment of the collision which side were you on?
"A. On my right-hand side."

Cross-examined:

"Q. Now, when you first saw Hennessy coming, as you say, on his left-hand side of the road, had you at that time completely passed the wagon?
"A. Yes, sir."

In another place:

"Q. I mean, until after you had completely passed it; you did not see Mr. Hennessy until you had gotten completely by the moss wagon?

"A. I saw him when I got right even with the moss wagon, and that is what made me pull short back to my right."

Questioned further, he repeated that the accident happened about 40 yards ahead of the wagon, and held to it throughout his examination.

The plaintiff knew that the negro driver, George Green, had seen the accident. He called on him before the trial and asked him about the case. The driver, however, was placed on the stand by the defendant and testified that he was looking right at plaintiff and defendant at the time. The driver of the wagon corroborates the defendant. He testified that the collision took place 45 or 50 yards in front of him. That the plaintiff seemed to lose control of the front wheel of his motorcycle and went right into Mr. Daigle's automobile. That the motorcycle started to cross over from the left to the right side of the road, got into the loose gravel, plaintiff lost control and hit Mr. Daigle.

Asked if the motorcycle and defendant's car were trying to pass each other by the side of the wagon at the time the accident happened, he answered "No." Asked if he was positive and he said "Yes."

The negro driver also says that plaintiff was on the same side of the road that his wagon was on; that his wagon was straight behind Mr. Daigle's car when the accident happened, corroborating defendant that plaintiff was driving at the time on the wrong side of the road.

He stated on cross-examination:

"Q. Now, what did you do after the accident occurred, did you stop your mules?

"A. Yes, sir. After the accident happened I drove up to where it was and stopped about as far as from me as to over there (indicating)."

Then he drove his wagon a little in front of the yellow car and stopped there a little bit, then he drove off.

In speaking of the yellow car, the witness had reference to defendant's car.

Defendant says that he passed on some 25 or 30 feet beyond the place of the accident before he stopped. It therefore results that the witness Green must have driven his wagon past the plaintiff lying on the ground before he stopped; and that he then drove a little further and stopped again.

The witness Green spoke of having looked back and seen the plaintiff, etc. He was cross-examined closely, to have him admit that he was looking back when the collision took place. Plaintiff argues, from the fact that the witness looked back and saw the plaintiff, that the accident had happened while the plaintiff was passing his wagon, as the plaintiff claims that he was. But after a careful examination of all the witness says on the subject we conclude that plaintiff's contention is not supported by anything that this witness says. The statement of the witness is plain, that the impact took place in front of him; that he then went on forward, pulling his team to the side of the road, and drove past the plaintiff lying on the ground. That after passing him he stopped and looked back. He stopped the first time and looked back before he had gotten to the place where defendant had stopped his car. He then drove past defendant's car and stopped again, looking back at plaintiff each time.

It is worthy of notice that if the impact had taken place right by the side of the

wagon and mules, as contended for by the plaintiff, there would likely have been some testimony on the part of the driver of the wagon, about what the mules did. A sudden collision between an automobile and a motor bicycle right at the side of a mule team would have almost surely startled them into an almost instantaneous jump forward and to the side, away from the impact and the driver seated on top of the load of moss some eight or nine feet from the ground, would have had something to say about it in his testimony. Nothing is said about the mules having been frightened by the impact, consequently it seems probable that no impact took place right at the side of the mule wagon, as claimed by the plaintiff, else there would have been something said about what the mules did.

The probability lessens the weight of the testimony of Mr. Torres in that part in which he repeats the statement made to him by Mr. Daigle. It is a well settled rule of evidence that the correct repetition of the verbal statements of others, made some eight or nine months before, without having made exact memoranda as to same at the time, is very difficult to do. It can seldom be done without the memory varying in regard to it in some respects.

The evidence shows that there was a man named Himel and a lady or ladies in the car with defendant at the time of the collision, and that Mr. Himel was in the courtroom during the trial. The defendant did not call Mr. Himel nor any of the ladies as witnesses. Plaintiff urges this fact as a presumption that defendant did not call them because their testimony would have supported the plaintiff's contentions, if it had been done. If Mr. Himel or any of the occupants not called, had

been driving the car, the circumstances would have more weight. But according to the evidence, Mr. Daigle was driving himself.

The presumption contended for is created, where it appears that an effort is being made, by not calling witnesses present or accessible to the party, to conceal some fact that they know better or more about than the witness or witnesses produced. See:

Geddes & Moss vs. Simkins, 4 La. App. 125;

Day vs. R. R., 35 La. Ann. 694;

Ketchum vs. R. R., 38 La. Ann. 777;

Peyton vs. R. R., 41 La. Ann. 861 (p. 866), 6 So. 690;

Peetz vs. R. R. 42 La. Ann. 541, 7 So. 688.

Pruyn vs. Sheriff, 51 La. Ann. 320, 25 So. 125;

Rubenstein vs. Files, 146 La. 727, 84 So. 33;

Toca vs. Rozaz, 152 La. 317, 93 So. 108;

The rule is explained in:

Peetz vs. St. Charles St. R. Co., 42 La. Ann. 541, 7 So. 668, and Baptiste vs. Fourshy, 49 La. Ann. 1627, 22 So. 833;

Greenleaf, 12th Ed., Vol. I, Section 737;

Jones on Evidence, Section 19, etc.

R. C. L., Vol. 10, Subject: Evidence, Section 32, etc., pp. 884 to 889.

The plaintiff could have called Mr. Himel in rebuttal if he had wanted to.

As for the ladies, it was not shown where they were at the time of the trial.

And defendant's failure to place Mr. Himel on the stand does not make substantive proof going to show fault or neglect on his part.

The burden of proof was upon the plaintiff under the law, Civil Code, Arts. 2315 and 2316, to show that he was injured as a result of the fault and negligence of the defendant.

We have taken defendant's failure in the matter mentioned into account in summing up the case, but after everything has been weighed and considered it still remains that the preponderance of the substantive proof is, that defendant had passed and gotten by the wagon and team when he met and collided with the plaintiff.

Plaintiff's case is based on the alleged fault of the defendant in trying to pass between the wagon and himself, after plaintiff had met the wagon and commenced to pass it.

The district court in his reasons for judgment was of the opinion that the collision "was probably due to carelessness on the part of both plaintiff and defendant."

After a consideration of the entire case it does not seem to us that the plaintiff has established that his injury was due to the fault and negligence of defendant, with that reasonable certainty that should exist in the minds of the court, before the responsibility is decreed.

Judgment affirmed. Plaintiff and appellant to pay the costs in both courts.