This is a suit instituted by Lloyd E. Pittman, plaintiff, against the defendant, Mrs. Margaret E. Moustier doing business as the Dixie Stove Works, and brought under the provisions of the Louisiana Workmen's Compensation Act, Act No. 20 of 1914, as amended. Plaintiff alleges that on July 11th, 1945, while in the employ of the defendant as a stove mechanic, he delivered a Heavy Duty Vulcan Stove to Broussard's Restaurant, in 819 Conti Street, in the City of New Orleans, and that while in the act of unloading the said stove, it slipped and as a result thereof he suffered an inguinal hernia. He further alleges that this injury prevents him from performing work of any reasonable character and, therefore, he is entitled to compensation on the basis of total and permanent disability. He prays for compensation at the rate of $20.00 per week for a period not exceeding four hundred weeks or a total of $8,000.00, less a credit of forty weeks.
Defendant answered admitting the plaintiff's employment but denying the remaining allegations of the petition. Upon the conclusion of the testimony defendant entered a plea of prescription based on the fact that the accident, if there was one, occurred more than one year prior to the institution of this suit and not on July 11th, 1945, as alleged by plaintiff.
The trial court overruled this plea of prescription and rendered a judgment in favor of plaintiff as prayed for. Defendant has appealed.
Section 31 of Act No. 20 of 1914, as amended, Act No. 29 of 1934, provides:
"In case of personal injury * * * all claims for payments shall be forever barred unless within one year after the accident * * * proceedings have been begun as provided in Sections 17 and 18".
Plaintiff testified that the accident occurred and the injury manifested itself on July 11th, 1945, at approximately 8:30 a.m. Plaintiff himself does not recall the date, *Page 610 
but fixes it on the basis of his visit to Dr. Salatich, which he stated was on Monday, July 16th, 1945, which was the Monday after the Wednesday of the alleged injury, and, on the further fact, that Broussard's Restaurant was closed every Wednesday during the year 1945. He maintains that he delivered two stoves and a salamander to Broussard's during the year 1945, one stove sometime during February or March and the other on July 11th, at which time he was injured, and the salamander during the interval between the deliveries of the first and second stove. He contends that he started work on July 11th, at 8:00 a.m., was injured at 8:30 a.m. and almost immediately thereafter he returned to the defendant's place of business, informed Mr. Moustier of the accident and then went home. Plaintiff further testified that he returned to work on July 16th, 1945 and worked for defendant until April 20th, 1946, at which time he was discharged because defendant had ascertained that he was going into a similar business in competition with defendant. The record discloses that plaintiff and Vincent Montalbano, who was also employed by defendant, did actually establish a business in competition with defendant.
Thomas Milner Migaud, Sr., a former employee of the defendant, corroborated the plaintiff's testimony as to the date of the injury and that two stoves were delivered to Broussard's Restaurant during the year 1945.
Plaintiff's wife also testified that the injury occurred on July 11th, 1945.
Defendant testified that the Dixie Stove Works, at the time of the alleged accident, was being managed by her husband and that, since that date, Mr. Moustier has suffered a cerebral hemorrhage and remembers nothing concerning the business prior to his illness. She further testified that since the date of her husband's illness, she has actively managed the business.
Counsel for defendant offered in evidence a Social Security Time Book, which included the week ending July 14th, 1945. It indicated that the plaintiff worked the entire day of July 11th, and was actually paid overtime for that particular day. Plaintiff, however, is positive in his testimony that he worked only from one to one and one-half hours on the day in question. He further testified that he did not work on July 12th, 13th, and 14th, 1945, whereas the time book reflects that he worked the entire week ending July 14th, and was actually paid for working 6-7/8 days at the rate of $8.00 per day. This is in direct conflict with plaintiff's testimony that he worked only on Monday and Tuesday and from an hour to an hour and one-half on Wednesday, July 11th, 1945. Plaintiff further testified that he returned to work on Monday, July 16th, 1945, and worked from 8:00 in the morning until two o'clock in the afternoon, at which time he went to Dr. Salatich's office for an examination, and that after the examination, he immediately returned to work and finished the day. Referring again to the Social Security Time Book for the week ending July 21st, 1945, it shows that plaintiff did not work on July 16th, 1945, as plaintiff contends, and that he actually was not paid for working on that particular day.
If we accept this social security time book as evidence of the fact that plaintiff worked on the date in question, July 11th, then it would have been most improbable that plaintiff sustained the injury, which he alleges occurred on that day, for the reason that Dr. Salatich testified as follows: —
"Q. You say that the pain is very intense when you have an acute hernia? "A. Yes, sir.
"Q. Would it be possible to do any type of work while you had this pain? * * *
"A. * * * No, not very well, because any form of labor — you see, when you stand, your abdominal pressure is greater than when you lie down * * *".
Plaintiff's counsel, in his cross-examination of defendant, produced five pay envelopes, which were later identified by the plaintiff, and interrogated her as to whether or not she could identify the handwriting appearing thereon. She stated that the handwriting on the envelopes to-wit: the name of the employee, number of days that he worked and the various deductions of income tax and Federal Old Age tax, was that of Mr. Moustier; in fact, everything on that envelope with the exception *Page 611 
of the date, was in the handwriting of her husband. Subsequently, it was brought out that plaintiff himself had placed the dates on the envelopes, apparently for his own convenience. Plaintiff's counsel requested defendant to choose at random any envelope among the five and compare the amount received with the corresponding amount in the Social Security Time Book, in order to ascertain whether the dates on the envelopes corresponded to the dates in the time book. Defendant examined three of the envelopes and they all corresponded. The remaining two did not correspond and we are impressed by the fact that these envelopes were for the weeks ending July 14th, 1945 and July 21st, 1945, respectively, and that the dates thereon bear strong evidence of having been altered. Actually we believe that the envelope which plaintiff contends was his pay envelope for the week ending July 14th, 1945, was his pay envelope for the week ending July 21st, 1945, and that the envelope which he contends was for the week ending July 21st, was his pay envelope for the week ending July 14th, 1945. As we said hereinabove plaintiff admits that he dated the envelopes.
A careful examination of the envelope dated July 21st, 1945, will reveal that the date originally placed thereon has been partially erased and another date written over it. We believe that this original date was July 14th. The figure "14" appears to have been partially erased and the figure "21" written over it.
With respect to the envelope dated July 14th, 1945, a careful examination will reveal that above the date written in ink at the top of the envelope, will be seen the impression of another date — that of July 21st, which, in our opinion, was originally written in pencil and thereafter erased.
We are impressed by this evidence and we are, therefore, of the opinion that the dates which were originally placed on these envelopes have been altered. "The burden of proof rests upon a party, relying upon a written instrument, to account satisfactorily for any alterations operating as a substantial change in the effect of the instrument." Owens v. Felder, La. App., 35 So.2d 671, 672.
In addition to the foregoing evidence, defendant testified from the cash book of the Dixie Stove Works that only one Heavy Duty Vulcan Stove had been sold and delivered to Broussard's Restaurant during the year 1945, and that on March 7th, 1945, and that it was paid for on March 27th, 1945. She also produced and identified the Accounts Receivable Ledger of the Dixie Stove Works and more particularly Broussard's account which reflects all sales made to Broussard's during the year. It shows only two entries during the year 1945, one on March 7th, 1945, for the Vulcan Stove, and one on May 21st, 1945, for a salamander. It is our opinion that if any other stove had been sold and delivered by the defendant to Broussard's that the ledger would have reflected this fact.
Plaintiff and his witness, Migaud, testified that they did deliver a Heavy Duty Vulcan Stove to Broussard's Restaurant. Since the only stove which was sold to Broussard's during the year 1945, was delivered on March 7th, 1945, and not on July 11th, 1945, we conclude that the accident and resulting injury, if there actually was an accident, occurred on March 7th, 1945. It is interesting to note that plaintiff and his witness, Migaud, testified that the stove in question was delivered on a Wednesday, as Broussard's was closed on Wednesdays and it was the only day of the week that deliveries could be made. Referring to the calendar for the year 1945, we find that March 7th, was also a Wednesday, and a reference to the time book shows that plaintiff worked the entire day of March 7th, 1945.
Plaintiff testified that as soon as he received his injury, he reported to the office of defendant and then went home and remained in bed with an ice pack on his abdomen until July 16th, 1945. On cross-examination he stated that though he was in agony from the pain he did not call upon his family physician, Dr. Salatich, who testified that he had been plaintiff's physician since birth, until six days later. It seems improbable to us that a man suffering such excruciating pain, as plaintiff contends he was experiencing, would have remained away from his physician for a period of *Page 612 
six days. It will further be noted that when plaintiff did call upon Dr. Salatich, he informed the doctor that he was suffering intense pain and that though he was advised to go home and remain in bed, he returned to his work. Dr. Salatich's testimony indicates that if the plaintiff was suffering from an acute hernia on July 16th, 1945, then he would not have been able to perform any work as the pain, which he evidenced, was too great. Of course, we are fully cognizant of the fact that no physician can determine the intensity of pain that a person may suffer, because it is well established psychologically that "pain" is purely subjective rather than objective.
In addition to the above, it is to be observed that the plaintiff made no written report of this accident to Mr. Moustier and that he never visited a doctor of the insurance carrier of the defendant, although he knew that the defendant was covered by workmen's compensation. It is further observed that no claim for compensation was made upon defendant until June 28th, 1946, over eleven months after the alleged accident and resulting injury.
The trial court drew an unfavorable inference against the defendant because defendant had subpoenaed Mr. Broussard of Broussard's Restaurant, and had not permitted him to testify. We are cognizant of the fact that there are several decisions which hold that a litigant's failure to place a witness on the stand raises the presumption that had the witness testified, his testimony would have been adverse to the litigant's cause. However, admitting the tenableness of this argument, we are unwilling to concede that the effect of this inference or presumption would have balanced or turned the scales in favor of plaintiff. Mr. Broussard was present in court and his testimony was available to plaintiff and if his testimony would have strengthened plaintiff's position, he could have been sworn in his behalf.
A summary of the evidence indicates that the only question with which we are presently concerned is whether or not the plaintiff brought this suit within a year from the date of the alleged accident. We are of the opinion this accident did not occur on July 11th, 1945, as alleged by the plaintiff, but that, if it occurred at all, it was on March 7th, 1945, when the only Heavy Duty Vulcan Stove, sold by the defendant to Broussard's Restaurant was delivered.
We are of the opinion that the plea of prescription is well founded and should have been sustained.
As stated in Owens v. Felder, supra:
"We are reluctant to reverse the finding of a trial court based primarily on questions of fact, but in a case, such as we are presently analyzing, it is a self evident principle that it is occasionally easier to perceive fallacies and inconsistencies contained in the record by a comparison of the various portions of the transcribed record with other pertinent portions than it is to accurately observe and catalogue them while listening to the oral evidence of the various witnesses who testified during the course of the trial."
For the reasons assigned the judgment appealed from is annulled, avoided and reversed and it is now ordered that the plea of prescription be sustained and plaintiff's suit dismissed at his cost.
Reversed.