JANVIER, Judge.
On August 13, 1951, the Buick automobile of Norwood Shapiro was stolen from a commercial parking lot in New Orleans and when it was recovered about one week later, it had- been so badly damaged that the cost of repairing it and.replacing-tires and other equipment which had been removed amounted to $809.
Indiana Lumbermens Mutual Insurance Company had issued to Shapiro a policy of theft insurance under which it had agreed to indemnify him should any such loss occur and that corporation, in accordance with its obligation, paid to Shapiro the said ■ ampunt .-and, obtained from him an assignment of any claims he might have against anyone -responsible for: such loss.
The said' insurance company then brought this suit against Henry Darcental who, on Rampart' Street near the comer of Éienville 'Street, in New Orleans, operates an' automobile' parking lot known as Hank’s Lot. ' ' '
Plaintiff corporation ^ alleged that the said car, on the, day on which it was later stolen, had been" delivered for parking, at the said lot by one Herman Heilman, a friend of .the owner, Shapiro, to whom he had entrusted the car, and that later when Shapiro called for it, it could not be located and it- was discovered that it had .been stolen.
*461 Plaintiff alleged that the theft of the car and the resulting damage was caused by negligence of defendant or hi's agents or employees “in failing to maintain a proper watch over the automobile,” and “in allowing said automobile to be removed from said parking lot without taking the necessary and proper safe guards to prevent the said theft and removal.” .
Defendant denied that the car had been parked at his parking lot on thát day: and prayed that the suit be dismissed.
■In the Civil District Court for the Parish of Orleans there was judgment for defendant dismissing the suit and the matter is‘now before us on appeal:
In dismissing the suit the Judge of the Civil District Court rendered very concise reasons which read as follows:
“It is the opinion of this court that the plaintiff hás failed to prove his case. The burden of proof is on the plaintiff. His witness, Mr.' Heilman, testified that he believed he left the ■car at Hank’s Lot, but it is- the opinion of this court that he is not certain' at all where he left it.
“In the face of the positive testimony . of the defendant, Darcental, that he didn’t accept monthly parking in the past several years, and that' he never at any time accepted or parked .Mri;Shapiro’s car. by the month, and that the only time.he ¡ever parked Mr. ■ .Shapiro’s car was about, a year .prior to the accident, at a daily rate,-that he knew Mr. Shapiro, and in- the face of; the testimony of the plaintiff that he. did business with some colored atten- • dant, the court believes that the plaintiff has failed to prove his case, jje * * ”
Tlie record shows that on that side of Rampart Street just on the lowqr side of the building occupied by a well known Men’s Club there were three separate parking lot's operated by 'three different persons, which' lots are separated each from the other by large 'wire fences. There are no front fences to any of’the lots, the entire 'width of each' lot constituting its opening on Rampart Street,- the lot on the comer of Bienville Street also opening on that street. The center of these three lots was the one -which was operated'' by the defendant, Darcental, as Hank’s Lot. The corner lot was operated by Eugene Palmer, and the 'other lot, which is on'the upper side of defendant’s lot’, is operated by a Mr. Surgi. All three of these lots are entered by driving over a sloping sidewalk, referred to as a rámp which connects the surface of the lots with the driveway of Rampart Street, and this sidewalk or -ramp extends from the upper side of the Surgi lot across the,front.of that lot, across the front of the defendant’s lot, and across the front of the Palmer lot.
' Shapiro testified that for about two-years he had customarily parked his car in Hank’s Lot, originally, on a daily basis, but that for some- months prior to the loss he' had been parking it there “under a monthly parking arrangement” which he had made with “the colored attendant” at the lot, and that during that time each month he had paid to the colored attendant $7 as the monthly charge.
■ ' Heilman, who parked ' the cab on that "day, says: ' '
“I know Mr. Shapiro had some- sort of monthly parking arrangement- with the owner of the- lot or .operators of the. lot, and I had just brought the car in as I usually did and left it.”
When, .asked. if he knew - the name of, the lot, he said.: “I believe it is Hank’s Parking .Lot..” ,
■ Darcental, defendant, says' that he had known Shapiro for -about sik- years ‘and that about five years ' ago ' Shapiro had parked his car in his lot on a daily basis, but that although for a time he had had some customers who parked on a- monthly basis, Shapiro' had ' never had a monthly contract, and that for sometime prior to the loss Shapiro had not parked his car in •defendant’s lot'at all because he, Shapiro, “found out he could get a better rate at the comer and quit me.”'
*462 The owner of the corner lot, Eugene Palmer, who operates a small restaurant as well as the parking lot, testified that for about four or five years he had been operating his lot “mostly” on a monthly basis, and that for some months prior tO' the day on which the. car was stolen he had been parking Shapiro’s car on a monthly basis, and that Shapiro had been paying $7 per month. He does not say definitely that the car had been parked in his lot on that day.
Heilman who had left the car for parking, when asked where he had parked it, replied with the question, “Do you mean the specific spot?” And when told that counsel wanted to know the specific spot at which he had left it, he said: “As best I can remember I parked it on what we call a ramp between the sidewalk and the street.” ' When asked how far from the corner of North Rampart and Bienville Streets he had parked it, he said: “I could-n’t remember.” He was asked what he had done when he left the car and he said that he had left the keys in the car and had “walked off.”
Shapiro, the owner of the car, says that he went to the lot about eight o’clock that night and that when the car couldn’t be found the colored attendant told him that it had been on the lot at six o’clock. He said, however, that he did not know the name of the attendant who made that statement and that he could not identify him.
Were it not for the fact that Darcental did not produce as a witness the colored attendant who might have been in charge of his lot, we would have had even less difficulty in concluding that plaintiff had not borne the burden of' proving that the car had been parked on defendant’s lot. It appears that Darcental brought to court one, Woodrow Taylor, a colored attendant, who had been one of his employees, but who had also often parked cars for Palmer in his lot, and that this witness was not called to the stand on behalf of Darcental. Counsel for plaintiff point to this failure of defendant to produce this witness and argue that from' it there arose a presumption that had this witness been placed on the stand his testimony would have • been unfavorable to Darcental.
Counsel for Darcental counter with the argument that there was nothing to show that Taylor was the attendant who should have parked the car, or the attendant who admitted to Shapiro that the car had been there at six o’clock, and counsel also say that the witness was actually present and could have been placed on the stand for cross-examination by counsel for plaintiff under the provisions of LSA-R.S. 13:3663, which reads as follows:
“Where any of the parties litigant is an individual, a corporation, partnership or other legal entity, the parties examining shall be entitled to examine under the provisions of R.S. 13:3662 through 13:3664 the particular agent or representative of such individual or officer or officers or other representatives of such corporation, partnership or other legal entity having or having had knowledge, charge or supervision in whole or in part of the matter in question, whether or not such party is at the time an agent or representative or member of or otherwise connected with such individual, corporation, partnership or other legal entity.”
But the principal reason given by counsel for defendant for not placing Taylor on the stand was the fact that it was felt that plaintiff had completely failed to prove that the car had been left on defendant’s lot and that there seemed to be no reason to place any other person on the stand. Counsel in their brief say:
“The plaintiff attempts to make use of presumptions to the effect that the fact that the attendant did not testify will help it to- establish its case. * si: * »
And they say further thdt our Supreme .Court has held that a plaintiff cannot invoke this presumptioon to prove a case which otherwise fails to meet the burden *463 of proof. In support of this contention our attention is directed to Rubenstein v. Files, 146 La. 727, 84 So. 33; Toca v. Rojas, 152 La. 317, 93 So. 108, and Bordelon v. T. L. James & Co., 148 So. 484.
Under the provisions of the above-quoted cross-examination statute plaintiff could have placed Taylor on the stand. The record does not show that Taylor was the attendant to whom Shapiro had referred, nor does it show that the defendant knew just what attendant it was who is said to have spoken to Shapiro.
Under the circumstances, surely it cannot be said that, because defendant did not place Taylor on the stand, there arose a presumption that Taylor would have given testimony unfavorable to defendant. Surely if any such presumption was .created its effect did not have sufficient probative force to make out a case when the positive evidence failed to do so.
The judgment appealed from is affirmed at the cost of appellant.
Affirmed.