McBRIDE, Judge.
This suit arose out of an intersectional collision which occurred in the City of New Orleans on March 19, 1949, between an automobile owned and operated by the plaintiff and a taxicab owned by 'Major Williams and driven by John Holmes, his employee.
The scene of the accident was the intersection of Freret Street, which is paved and runs in an uptown-downtown direction, and Milan Street, which is also paved and crosses Freret Street at a right angle. Plaintiff was proceeding in ■ the direction of the lake on Milan Street and the taxicab was being driven on Freret Street in an' uptown direction. ' ‘ •
Plaintiff. sustained severe physical injuries, and.he brings a direct action against Nola .Cabs, Inc,, which under Ordinance 17,360 of .the City of New Orleans posted its bond for the indemnification of any person suffering injuries or losses as a result of an accident in which the taxicab might become involved.' Plaintiff prays for judgment in the sum of $5,000, which is the maximum amount of the bond insofar-as it covers the. above-mentioned taxicab.
The negligence charged to the driver of-the taxicab is that he was driving at a speed approximating or exceeding 60 miles per hour and was negligent in' not keeping a proper lookout ahead. The answer filed by defendant, after denying that the accident was caused through any fault on the part of John Holmes who drove the taxicab, alleges that the accident and plaintiff’s injuries were caused solely because of plaintiff’s own negligence in that he failed to keep a proper lookout, did not have his car under control, did not stop before entering the intersection, was speeding, and failed to accord the taxicab the right of way; in the alternative, defendant pleads that plaintiff was contributorily negligent in the above respects.
After a trial of the case on the merits, the court below dismissed the suit. Plaintiff appeals.
Plaintiff’s testimony is that he approached the intersection of Freret Street with his car under perfect control; that upon reaching the intersection, he stopped in obedience to the official traffic sign located there and that while stopped he looked into Freret Street in both directions preparatory to proceeding across the intersection. The hour was approximately 1:40 a. m.; plaintiff states he saw no vehicles to his left pro-, ceeding in a downtown direction but that to his right he noted the presence ■ of an automobile in the approximate center of the .next downtown crossing of Freret Street, that is the Marengo Street intersection, and that the vehicle was headed uptown. Plaintiff states that he .did. not and could not ascertain the speed of this automobile and had no knowledge or warning _ that it was proceeding at a rate of speed exceeding lawful limits, but he added: “I imagine he must have picked up terribly after I saw him.”
The- vehicle' which Mr. Coker says he observed at the.M.arengo Street intersection, proved to be the taxicab operated by. Holmes which collided with the Coker vehicle. Mr. Coker insists that he proceeded across the intersection entirely ignorant of the speed of the taxicab and on the assumption that the approaching vehicle was 'traveling at not more than a lawful speed, and that he never considered it a hazard to his enter--ing and crossing the intersection in a normal manner and paid no further attention to it. Plaintiff alleged in his petition that after making the stop he “drove his automobile forward and proceeded across the intersection at a normal and natural speed and acceleration.” However, in testifying plaintiff was unable to give any approximation of the speed of his car after starting the crossing; he could not remember whether or not he shifted the gears. Plaintiff had no inkling of the impending collision until he saw “a flash of light” and *67 heard “bang.” He was rendered unconscious as a result of the force of the impact. He produced no other eyewitnesses to the accident.
After the impact the Coker vehicle deviated from its original course and- went off on an oblique angle of about 90 degrees toward the left for a distance of some 96 feet before it came to rest in the yard of a residence. The taxicab was deflected somewhat to the right and ran over the ¡curb to stop against a house after having traveled about 41 feet from the point of • collision. The photographic as well- as the testimonial evidence impels the conclusion that the front of the right side of the Coker car was run into by the left front portion of the cab, although couns.el for the respective parties entertain divergent views on that point.
Plaintiff insisted that when the crash came he. was • more than halfway • across Freret Street and in fact was “practically across” because the -front wheels of his car were near to the edge of the woods-side curbing. Defendant disputes plaintiff’s statement in that regard and points to certain testimony given by Officer John Lopez and a Charles W. Peyton, who made an investigation at the scene shortly after the accident happened and before the wrecked cars had been removéd. Officer Lopez is the accident technician of the New Orleans Police Department, and among his duties is that of investigating traffic accidents in order to ascertain if the vehicles involved were in good mechanical condition and to gather such details of the accident as are apparent from the physical evidence . Lopez testified that he backtracked from the points at which the two vehicles had come to a stop. and followed the tire marks of both cars, which were discernible, and these led to a common point in the middle portion of the intersection which in his opinion was the exact point at which the two cars crashed. Peyton is the adjuster and investigator of accidents for the defendant company and his testimony parallels -that of Lopez. Peyton also concluded from the tire marks left by the automobiles that the accident happened in the center of the inter- - section. Besides that, Peyton testified that there was mud in the street which had dropped from both cars and that the location of the mud was in the center of the intersection. Therefore, the existence of such physical evidence as was found by both Lopez and Peyton contradicts the statement .of plaintiff that he was nearly across when his automobile was run into by the taxicab.
Counsel for plaintiff argue that the fact that the Coker automobile traveled as far as it' did after béing struck sufficiently implies' that the taxicab must' have been traveling at an extremely rapid rate of speed, otherwise the Coker automobile' could not have been knocked for the'distance of 96 feet.' Counsel’s appreciation of the evidence is 'that the Coker vehicle was knocked sideways for the considerable distance mentioned.
We do not believe the force of the-blow alone sent the Coker automobile to its ultimate resting place. Mr.- Coker was rendered unconscious and he was unable to give any testimony whatsoever as to the behavior of his automobile after being struck, and we'are inclined to the belief that just at' the moment Mr. Coker- saw the “flash of lights” he instinctively swerved to his left thus directing the front wheel's of the car on the path it took after the crash. Furthermore, the location of the blow received by the Coker car would have tended to turn "the front wheels thereof in the direction in which -the car went.
Besides' the driver of the taxicab there were two passengers and these were seated in the rear of the cab; there was also a rider who sat alongside the driver in front. The rider could not be produced as a witness by defendant for the reason that his whereabouts was unknown and he could not be summoned. But the defendant did produce the two passengers, Royal and Givens, and they testified that while they had no knowledge whatever as to how the accident might have happened, they did know that prior to the accident the taxicab had not been speeding but had been traveling at a speed of between 20 to 25 miles per hour.
*68 John Holmes, who had driven the taxicab, although present in court, was not placed on the witness stand by either party and in view of the contentions'made, some comment in connection with this feature of the case is in order. Plaintiff’s counsel attempted to call Holmes for cross-examination under LSA-R.S. 13:3662 et seq., but was met with an objection from defendant and the objection was sustained. Holmes was never called as a witness by either party.
Plaintiff’s counsel make the argument that whereas Holmes was present in the courtroom throughout the trial below and defendant did not see fit to call him to the stand to testify as its witness, there is raised the presumption that had the witness testified his, testimony would have been prejudicial to the defendant’s cause.
It is well established that a litigant’s failure to produce a witness creates the presumption that had the witness testified his testimony would have been unfavorable to the litigant who failed to call him.
It is contended by defendant’s counsel that whereas Holmes was present at the trial he was as well available to plaintiff as a witness and that plaintiff, if he desired Holmes’ testimony, could and should have placed him on the stand, which circumstance has the effect of preventing any unfavorable presumption from arising against defendant. We do not believe that as a matter of law this contention is correct and we are unwilling to say that the plaintiff should have placed Holmes on the witness stand as his witness thereby vouching for Holmes’ veracity. The possibilities most likely were that the taxicab driver would have been hostile to plaintiff, and it would be unreasonable to hold that a litigant, when a witness brought to court by his adversary is present at the trial, must place the witness on the stand as his own. The Supreme Court in Pittman v. Robinson, 217 La. 76, 46 So.2d 43, questioned the correctness of a holding made by this court in 37 So.2d 609 that a witness who was present in court at the behest of the defendant was as well available to plaintiff and that plaintiff should have had the witness sworn in his behalf.
In the instant case the plaintiff elected to submit his case on his own testimony that when he reached Freret Street the taxicab was a block away and that during the short interval it took him to reach the point where the collision occurred the cab traveled 330 feet. We do not think that plaintiff’s testimony makes out as much as a prima facie case on his behalf, and the failure of the defendant to produce Holmes as a witness was and is of no importance in the determination of the case. Any inference which might be drawn from such failure on the part of defendant to produce Holmes is not equivalent to direct evidence and would not make out a case for plaintiff where none had been made by the plaintiff’s evidence. See 31 C.J.S., Evidence, § 156, p. 860.
In Di Martino v. Continental Ins. Co. of New York, 187 La. 855, 175 So. 598, 599, a defendant failed to prove a special defense, and the argument was made that the fact that the plaintiff had failed to produce two material witnesses was sufficient to raise the presumption that their testimony would have been prejudicial to plaintiff. The Court said:
“ ‘Counsel for defendant loses sight of the fact that incendiarism is an affirmative defense and the burden rests upon him to establish same. A conspiracy not having been proved, or even a presumption raised, it was not necessary for the plaintiff to call these witnesses to his defense.’ ”
In Dennis Sheen Transfer Co., Inc., v. Mertzweiler, 12 La.App. 49, 125 So. 188, we held that ordinarily an unfavorable presumption follows the failure to produce a witness but that such presumption is not sufficient to overcome positive testimony.
The Court of Appeal, First Circuit, in Hennessy v. Daigle, 11 La.App. 474, 123 So. 900, held that a defendant’s failure to call a witness present during the trial, who was riding in defendant’s automobile at the time of the accident, did not make sub *69 stantive proof going to show default or neglect on his part.
In Cox v. Magnolia Gas Co., 8 La.App. 103, the holding was that the failure of defendants to call all persons who may have known of the circumstances of the case could not supply the want of affirmative proof, the burden of which was on the plaintiff.
The correctness of plaintiff’s statement that he stopped at the intersection in obedience to the stop sign is challenged. Defendant produced besides Offi7 cer Lopez, who has already been mentioned as having been at the scene of the accident, two other officers, namely, Patrolman Fred Cook and Patrolman Louis Thevenot. The patrolmen testified that they questioned Mr. Coker about his having stopped for the sign and that plaintiff told them that he did not remember whether “he stopped or not.” Officer Lopez corroborated the testimony ,of the patrolmen.
Sworn declarations from the witness stand should prevail over unsworn statements which might seemingly contradict the testimony, and it is equally true that the unsworn statement does not prove the recitals thereof when the witness was not under oath. The only role that could possibly be played by the statements made by Mr. Coker to the patrolmen is that those statements might tend to discredit Mr. Coker’s testimony that he stopped his automobile at the intersection.
Therefore, according to plaintiff’s own testimony, the taxicab was 330 feet away when he started to negotiate the crossing of Freret Street and plaintiff would have us believe that the taxicab traveled that distance in the time it took him to partially complete the crossing of the intersection. For the purposes of discussion, even if we eliminate from all consideration the testimony of Lopez and Peyton that the crash occurred in the center of the intersection and assume that the Coker car had almost completed the crossing, plaintiff’s car would have then traveled about 25 feet of the 33-foot width of Freret Street when the crash came. Therefore, according to plaintiff’s version, the taxicab traversed 330 feet during the same time it took plaintiff to travel the 25 feet, or, in other words, the taxicab was traveling more than thirteen times as fast as Mr. Coker’s automobile. Assuming Mr. Coker’s “normal speed” was only 10 miles an hour, we would also have to assume that the taxicab traveled at a rate of 130 miles an hour which, of course, is absurd. Or if the natural speed at which Mr. Coker stated he traveled can be lowered tó 5‘ miles an hour, then the taxicab was moving at 65 miles an hour which we cannot believe in view of the testimony of the two passengers who stated that the taxicab w'as not speeding.
The plaintiff has failed to prove with legal certainty that there was negligence on the part of the operator of the taxicab.
In coming to the conclusion stated above, we do not mean to imply that we think Mr. Coker deliberately made false statements as it would be hard indeed to believe that he did so in view of the excellent reputation which he bears in New Orleans and the high esteem in which he is held by those who know him. Our belief is that Mr. Coker was honestly in error in his appreciation of the distance the taxicab was away from Milan Street when he reached the corner and that whether he made the stop or not, he imprudently drove his automobile out into the intersection and into the path of the taxicab which was in near proximity and this was the proximate cause of the accident.
For the reasons assigned, the judgment appealed from is affirmed-.
Affirmed.