JUANA CRUZ RIVERA, ETC., Plaintiffs and Appellants, *v.* RAMÓN RIVERA ET AL., Defendants and Appellees.

No. 10605. Argued August 26, 1952.—Decided August 29, 1952.

*Guillermo Bauzá* for appellants.　*Manuel Cruz Horta* for appellees.

MR. JUSTICE ORTIZ delivered the opinion of the Court.

The main problem in this case is to determine the lack or existence of civil liability on the part of the parents of

a minor 12 years old for the damages caused by said minor upon shoving a classmate of hers in a schoolroom. The former District Court of Puerto Rico, San Juan Section (now Superior Court, San Juan Section) entered judgment dismissing the complaint in an action for damages filed in the instant case by the parents of Juana Cruz Rivera, who was allegedly injured when defendants' daughter pushed another child. Only the evidence for the plaintiffs was heard in the lower court inasmuch as the defendants submitted the case on the basis of said evidence. The plaintiffs appealed from that judgment and their only assignment of error is to the effect that the lower court erred in holding that the negligence of the minor Myrna Rivera Sánchez may not be charged to her parents, the defendants. The defendants-appellees filed no brief.

 The court *a quo* made the following findings, which have not been challenged:

"That Juanita Cruz Rivera, Plácido Luis Rosa and Myrna Rivera Sánchez are between eight and twelve years old and in the sixth grade of grammar school; that on September 9, 1949, at about 10:15 in the morning, while said minors were in the Jesús María Quiñones school, and the teacher at the door of her classroom, at a distance of approximately twelve feet from the place of the accident, and during the period known in the curriculum of our schools as lunch or recreation period, the minor child of the defendants and the minor Juanita Cruz Rivera were standing between two rows of desks, while another pupil called Plácido Luis Rosa gathered in a basket he used as a garbage can, the litter from the children's lunch, as well as the papers he found on the floor of the room; that Myrna asked Plácido to let her pass so that she could throw a rind into another waste basket, and Plácido told her that before he would let her pass she had to blow a horn; that she then shoved him, in passing, and he fell backwards carrying along with him the desk of the plaintiff minor who fell to the floor with her right arm under her, supporting all her weight, and fracturing her said arm; that she was taken to the Municipal

Hospital where she was treated, X-rayed and put in a cast; that the bone fracture healed and, in the opinion of the doctor who examined her, movement in her arm was reduced by fifteen degrees and although this condition might possibly disappear, he can not assure it at this time; that both the father and the mother of the injured minor suffered mental torture and anguish by reason of said accident; that Myrna was in a public school under the custody of a competent teacher such as are all the teachers designated by the Government of Puerto Rico to conduct its schools; that her parents' behavior in sending her to school was the normal or standard behavior of any parent in connection with his children of school age.

"There was no evidence as to the pecuniary amount of the damages alleged, nor of the presence of Myrna's parents at the place of the accident, nor of any action on their part connecting them with the cause of the accident or fault, as a consequence of which they might be charged with negligence as the cause of the injuries, nor that Myrna was a child of such habits or characteristics as would require a certain vigilance or supervision in connection with her actions."

Sections 1802 and 1803 of our Civil Code, insofar as pertinent here, provide as follows:

"Section 1802.—A person who by an act or omission causes damage to another when there is fault or negligence shall be obliged to repair the damage so done.

"Section 1803.—The obligation imposed by the preceding Section is demandable, not only for personal acts and omissions, but also for those of the persons for whom they should be responsible.

"The father, and on his death or incapacity the mother, is liable for the damages caused by the minors who live with them.

". . . . . . . .

"The liability referred to in this Section shall cease when the persons mentioned therein prove that they employed all the diligence of a good father of a family to avoid the damage."

The liability of the parents which arises under the preceding Sections is of a primary, not secondary, nature. That is, it is based on the own fault or negligence of the parents,

and not on that of the children. (Leonardo A. Colombo: *Culpa Aquiliana*, p. 322.)

Such fault or negligence of the parents is related to their duty to exercise vigilance over the minor children who live with them, to duly discipline them and to provide them with a proper education and environment, in order to prevent harmful acts on the part of children of scant discernment and limited intellectual capacity. (*Nadal* v. *Miranda*, 27 P.R.R. 300, 305; *Portalatín* v. *Noriega*, 33 P.R.R. 755; *Rodríguez, etc.* v. *Santos*, 40 P.R.R. 45; *Soto* v. *District Court*, 52 P.R.R. 459; 12 Manresa 661, 1951 ed., Planiol-Ripert, *Derecho Civil Francés*, Vol. 6, p. 861.) In Colombo, *Culpa Aquiliana*, p. 321, it is set forth:

". . . The fundamental principle, however, offers special hues, because, although it is true that progenitors exercise over their descendants a direct vigilance, the more so when the latter are of a tender age, it is nonetheless true that such vigilance is the practical and immediate derivation from the duties imposed by the *patria potestas,* which duties are regulated by law and rest on the father and mother jointly. Sections 265, 266, 278 and their concordant sections bind both parents to correct or see to it that others correct their children, moderately, with or without the intervention of the judge; to rear them and to choose a profession for them; to support and educate them in accordance with their means, etc., and these duties, with respect to the children, imply the difference and obedience that children owe to those who brought them into the world. Therefore, 'where the children are under the power of the parents, the latter are bound and in a position, under the authority conferred upon them by the *patria potestas,* to support them and to make them behave within the limits of the duty and respect due to persons and to the property of others. If the children transgress, such overstepping is, in most cases, due to the lack of vigilance and care on the part of the parents or to a laxity in the morals and discipline in the home.'

"If there is fault, it is then, fault *in vigilando,* because the steps advised by prudence in order that minors behave themselves in harmony with the rights of others, were not taken. It is incumbent upon the parents to see to this, supplying · with

their experience, knowledge and activity, the inherent deficiencies of beings who have not yet reached a full physical and intellectual development.

"Indeed, the liability of parents is not a liability for the act of another, but for their own act, and arises from the failure to discharge the duties imposed upon them by law. This was recognized in a decision which holds that the liability of parents lies, not on the fault of the children, but on the fault with which the parents may be charged because of their lack of foresight or care. Nevertheless, it is considered complex because the physical act which caused the injury is done by someone alien to the person truly responsible."

Antonio Borrell Maciá, in his *"Responsabilidades derivadas de culpa extracontractual civil"*, states at page 113:

"One of the essential functions of paternity, after bringing children into the world, is to educate and take care of them so that, when the time comes, they may be real men, capable of living with others. Children, who enter this world helpless, absolutely need their parents who must provide them with material support, give them the necessary maintenance to survive and see to their safety and that of their fellow creatures. They have the amplest of authority and prestige over them; and if, this notwithstanding—an odd case in nature—paternal orders are ignored, and the child must be corrected, the law affords the parent the manner to do it; and only in truly extraordinary circumstances, as in the case of inhuman parents, who, instead of looking after their children out of love, hate them or bring them up in immoral surroundings, incite them to crime, etc., only then is the law compelled to interrupt the *patria potestas* and to prescribe the most adequate means in order that the child may not be under the perverse influence of his parents, removing him from their power and company.

"This is related with responsibility: the more authority, the more responsibility; the more freedom, the more responsibility. The father is liable for the acts of his children while the latter are under his power, live with him and, consequently, he may watch them."

In Oyuelos, *Digesto*, Vol. 7, p. 745, it is set forth:

"*Patria potestas*, a series of rights and duties, includes, among the latter, the duty to exercise vigilance over the acts with which it is concerned, and on this function of inspection or vigilance, or of control, as we might say now, admitting this foreignism, lies the basis of the liability imposed upon parents by the second paragraph of § 1903 . . ."

In other words, parental responsibility is a consequence of the paternal authority. Parents control the conduct of their children and this implies the duty to exercise a reasonable care to prevent the children from creating an unreasonable risk of bodily harm to others. (Restatement of the Law of Torts, Vol. 2, p. 858).

In *Nadal* v. *Miranda, supra,* the father of Rafael Miranda Carbó, the defendant's minor child, was held liable for the death of another person caused by the child by wilfully and negligently shooting said person with a shotgun.

In *Portalatín* v. *Noriega, supra,* the father of Cándido Noriega, a minor 18 years old, was held responsible for damages caused when the minor negligently drove and struck the plaintiff. It was held:

"When a father is sued for damages caused by the negligence of his minor son in driving an automobile the defense that the father used all of the diligence of a good father of a family should refer to the acts that caused the damages and is not proved by mere evidence that the father sent his son to a school or university, or that the minor had been licensed by the government, after examination, to drive motor vehicles.

"The father . . . is not exempt from liability because the accident occurred while the minor was acting as employee of another. . . ."

The opinion recites that, as a question of fact, the minor had been fined for speeding prior to the accident and that the father knew of it and "could have exercised the due diligence of a good father of a family to prevent further liability by revoking the permit that he had given to his son for driving the automobile."

Now, the liability of parents for the acts of their minor children is not absolute. A parent is not a *sine qua non* guarantee for the acts of his children. Each specific case must be determined by its special circumstances, and the facts of each case must be weighed in order to determine whether or not the parents were guilty of negligence, as to whether the acts of the child are due to the parent's failure in his duty to watch, reprimand, discipline and educate. (To this effect see *Johnson* v. *Butterworth*, 157 So. 121, a Louisiana case under a statute similar to ours.)

If we examine the circumstances of the cases of *Nadal* v. *Miranda, supra,* and *Portalatín* v. *Noriega, supra,* where the children caused damages in negligently firing a shotgun and negligently driving a vehicle, we notice that the children performed acts which by themselves involved danger to others. The amount of danger involved in the acts determined the negligence of the parents. The duty to watch is related to the duty of foreseeing risks which, in its turn, depends on the degree of danger involved in the conduct. The fact that a minor fires a gun or drives a vehicle implies by itself the substantial possibility that his parents failed to properly discharge their duties to watch and educate. This conduct implies the probability of a defective home environment.

The circumstances of the instant case are different and do not imply negligence on the part of the parents. We are dealing with a game between children, inside a schoolroom, in which a girl pushes a boy, as an incident in an infantile joke, without any wicked intention to injure anyone and without being guilty of negligence. It is an ordinary and common act between children, which involved no danger by itself and which rather resulted in an unfortunate accident. The parents of the girl who inflicted the injuries were not bound to prevent their child, by prior reprimand or vigilance, from engaging in a childish game with her friends. No mat-

ter how active or effective the prior vigilance might have been, and no matter how adequate the education in the home had been, it would not have prevented ordinary and common accidents such as the one in the case at bar. The need to exercise control to avoid such conduct on the part of his children as might involve foreseeable risks must be imposed on parents. (See *Jorge* v. *Umpierre*, 49 P.R.R. 75, where it is said that negligence is conduct which creates an undue risk of harm). But such kind of dangerous conduct is not involved in the case under our consideration.

The Louisiana case of *Wagner* v. *Barbin*, 125 So. 766, holds that parents are not responsible for injuries accidentally inflicted by their children. In that case a boy threw a stone with a sling-shot and struck a girl. It was established that the children habitually used those instruments in a manner which was neither malicious nor mischievous and that since the damage was purely accidental, there was no need for paternal care, vigilance or discipline.

In the recent Louisiana case of *Phillips* v. *D'Amico*, 21 So. 2d 748, 750, a father was held liable for the injuries inflicted by his child with an air gun but it was stated incidentally as follows:

"Of course, if the instrumentality is not inherently dangerous and there is no negligence in the manner of its use, then there is no liability even though, because of accident, damage is caused to some one else. As recognizing this rule, we cite *Toca* v. *Rojas*, 152 La. 317, 93 So. 108, and *Wagner* v. *Barbin*, 12 La. App. 640, 125 So. 766."

Under the common law and in most jurisdictions in the United States the mere fact of paternity does not make a parent liable for the torts of his minor children, even if they live at home with him. Liability exists only by virtue of the independent negligence of the parent, or when the child acts as agent of his parents or when the parents ratify or consent to the acts of their children. (39 Am. Jur. 690,

§ 55.) The parent is guilty of negligence when the parent himself entrusts dangerous instrumentalities to his children or fails to restrain a child whom he knows has dangerous tendencies. None of those situations applies to the facts of this case.

■■ The mere fact that the minor involved here was in school when the accident occurred does not exclude any possible liability of her parents since the minor was still living with them and was subject to their authority. (Giorgi, *Teoría de las Obligaciones*, Vol. 5, pp. 399, 400.) However, although said fact does not prove lack of liability, it must be considered as one of several factors in determining whether the parents have discharged their surveillance duty. Parents are justified in relaxing their immediate surveillance over their children upon subjecting them to the transitory custody of school authorities, and they must not suffer the consequences of ordinary and common acts done by their children while in school.

■ One aspect of this case should be considered. The defendants did not present any evidence whatsoever at the hearing in the lower court and submitted the case on the basis of plaintiffs' evidence and it was on the basis of said evidence that the lower court entered judgment dismissing the complaint. Now, the last paragraph of § 1803 of the Civil Code, applicable hereto, provides the following:

"The liability referred to in this Section shall cease when the persons mentioned therein prove that they employed all the diligence of a good father of a family to avoid the damage."

A literal construction of that Section might lead to the conclusion that liability is presumed and that it is incumbent upon the parents to present evidence to overcome that presumption by means of proof of diligence. In 12 Manresa 664 (1951 ed.) it is said:

"In order to explain the scope or extension of the liability imposed on those persons who must answer for the damages

caused by another, as well as the effects of this obligation, it remains to be said:

"First: That said liability ceases when the persons upon whom § 1.903 imposes it prove that they employed all the diligence of a good father of a family, there being established in said Section by virtue thereof a legal presumption of the guilt of the persons mentioned therein, for by reason of the relations of authority or superiority which exist between them and the ones who caused the damage, the law presumes that the cause thereof is chargeable to them by their own fault or negligence, considering them as the moral authors of said damage because they failed to exercise the necessary care or vigilance to avoid the inflicting of such damage, with which opinion the judgment of May 18, 1904, *supra,* agrees. But such presumption established by law is not absolute or *juris et de jure,* but *juris tantum,* and, consequently, may be overcome by evidence to the contrary . . ."

Nevertheless, if from the very evidence for the plaintiffs it appears that the parents were not negligent and that they did not fail in their vigilance duty, and if such evidence for the plaintiffs is compatible with the exercise of an adequate paternal diligence, as is the case here, then, such evidence for the plaintiffs fails to disclose any presumption against the defendants, and the latter need not prove affirmatively the exercise of diligence.

From the point of view of the alleged negligence of the minor who caused the injuries, we must recall the decision of this Supreme Court in *Hernández* v. *Acosta,* 64 P.R.R. 166 and *Figueroa* v. *Picó,* 69 P.R.R. 372, to the effect that children of tender years are not required to conform to the standard of behavior which it is reasonable to expect of adults. Their conduct is to be judged by the standard of behavior to be expected from a child of like age, intelligence and experience. The facts of this case do not imply negligence on the part of Myrna Rivera Sánchez. Nor should the parents be held liable on the basis of an alleged act of assault and battery on the part of that child. The

evidence and the facts do not show that she acted with the intent to injure which is an essential element of the offense of assault and battery. Incidentally, United States decisions as to liability of parents for intentional harm caused by their children are annotated in 155 A.L.R. 85 and it is held that said liability for the intentional acts of children is limited to situations where the parents know or are bound to know the dangerous and vicious habits and tendencies of their children and take no restrictive or disciplinary measures. Such is not the situation in the instant case.

The judgment of the lower court will be affirmed.